UNITED STATES of America, Appellee,

v.

Richard NEAL, Appellant.

No. 92–1740.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1992.

Decided March 30, 1993.

Harlan Goulett, Minneapolis, MN, argued (Allan H. Caplan, on the brief), for appellant.

Steven Rich, Rapid City, SD, argued (Kevin V. Schieffer, on the brief), for appellee.

Before McMILLIAN, MAGILL, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Richard Neal was convicted by jury verdict of unlawful use of a telephone to facilitate the distribution of cocaine in violation of 21 U.S.C. § 843(b), possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court [1] sentenced Neal to a term of imprisonment of 235 months and to five years of supervised release.

On appeal, Neal argues that the district court's refusal to instruct the jury on the defenses of entrapment and of coercion constitutes reversible error. Neal also asserts that the district court erred in its application of the sentencing guidelines in sentencing him. We affirm the conviction and sentencing of Neal.[2]

I.

In the summer of 1987, a drug task force, including agents from the United States Drug Enforcement Administration (DEA) and other state and local law enforcement officers, hired a retired police officer, Kenneth Brown, to work as an

---

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

2. We also grant appellee's motion to strike and deny appellant's motion to supplement the record. *See* Fed.R.Evid. 606(b).

informant to assist in their attempt to identify drug suppliers in the District of South Dakota. Brown, who lived in Rapid City, South Dakota, assumed the name of Tony Morelli for this operation. Morelli made contact with his landlord's son, Chuck De La Garza, who, after being arrested for his participation in a drug deal in Florida, cooperated with the task force in identifying potential suppliers of drugs.

De La Garza identified Peter Santcroos, who lived in San Antonio, Texas, as a possible source of cocaine. Morelli negotiated with Santcroos and arranged to meet Santcroos and two other individuals who Santcroos said would supply the cocaine. They were to meet Morelli and an undercover DEA agent from the task force, Dewey Greager, in an airport in San Antonio. From there, the group was to fly to St. Louis for a "flash roll" [3] on September 30, 1987.

Defendant Richard Neal, who also lives in San Antonio, alleges that Santcroos came to him on September 29, 1987, asking for help because Santcroos's cocaine sources backed out on him and he feared repercussions from the agents whom he perceived to be members of the Mafia. Neal accompanied Santcroos to the airport the next day and flew to St. Louis for the flash roll with Morelli, De La Garza, Greager, and three other undercover DEA agents. The first time the members of the task force knew of or had any contact with Neal was when he arrived at the airport with Santcroos.

Once in St. Louis, the group discussed Morelli's purchase of up to twenty-five kilograms of cocaine. Neal voluntarily offered the names of persons who could possibly supply the drugs for the agents. Neal telephoned Tony Perez, who was a drug dealer in Los Angeles, and attempted to introduce him to Morelli. Neal claims this was done under pressure as he, like Santcroos, perceived the agents to be members of the Mafia. The next day, the agents displayed to Santcroos and Neal a half million dollars in cash at a bank safety deposit box. Neal asserts that on the flight back he told the agents that he would not complete the deal. The agents testified to the contrary.

After the trip to St. Louis, several telephone conversations occurred among Morelli and Santcroos and Neal discussing potential arrangements for a sale of cocaine to Morelli. Neal alleged that due to continuing pressure from the agents whom he continued to perceive to be Mafia members, he set up a deal to cover the loss from the St. Louis trip during which no deal was made. He contacted Greg Griffin in Ohio to try to set up a deal, but it did not work out. In December of 1987, however, Neal flew to Los Angeles, gave Perez $30,000 so that he could obtain the cocaine, and flew to South Dakota. On December 15, 1987, two kilograms of cocaine were delivered to Morelli's apartment in Rapid City, South Dakota. Drug task force agents arrested Neal in Rapid City.

## II.

Neal's first argument is that the district court erred in refusing to instruct the jury on the entrapment defense. "The question of entrapment is generally one for the jury, rather than for the court." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988) (citation omitted). The defendant is entitled to an entrapment instruction when sufficient evidence exists from which a reasonable jury could find entrapment. *United States v. Grimes*, 899 F.2d 731, 732 (8th Cir.) (quoting *Mathews*), cert. denied, 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990). The affirmative defense of entrapment has two related elements: (1) government inducement of the crime, and (2) the defendant's lack of predisposition to engage in the criminal conduct. *United States v. Stanton*, 973 F.2d 608, 609–10 (8th Cir.1992) (citations omitted); *see Jacobson v. United States*, ⸺ U.S. ⸺, ⸺ n. 2, 112 S.Ct. 1535, 1540 n. 2, 118 L.Ed.2d 174 (1992).

---

3. A "flash roll" is a term that describes a meeting where prospective sellers are shown a large amount of money to establish the prospective buyers' (undercover agents) credibility and ability to deal in large amounts of cocaine, i.e., a form of "due diligence" for major drug dealers.

Entrapment results from the inducement by a government agent, not a private citizen. *United States v. Stringer*, 902 F.2d 1335, 1336–37 (8th Cir.1990) (citing *United States v. Leroux*, 738 F.2d 943, 947 (8th Cir.1984)); *United States v. Hodges*, 936 F.2d 371, 372 (8th Cir.1991). The district court refused the entrapment instruction on the basis that the inducement was by Santcroos, a private citizen. Neal argues, however, that he was induced by the government through the agents' pressure on Santcroos into joining the conspiracy.

A similar factual situation and argument was addressed in *United States v. Bradley*, 820 F.2d 3 (1st Cir.1987). In *Bradley*, an agent for the government allegedly threatened to physically harm Brenner if he did not obtain a pound of cocaine for a drug transaction. *Id.* at 5. Brenner sought the assistance of his friend, Bradley, and told him of his plight. *Id.* at 6. Bradley sympathized, made some phone calls on Brenner's behalf, and eventually helped complete the sale. *Id.* The court instructed the jury on entrapment with respect to Brenner but not as to Bradley. *Id.* at 5. The jury acquitted Brenner and convicted Bradley. *Id.* Bradley argued that the government's conduct should "equally apply to him, to whom it was relayed, and who was influenced accordingly." *Id.* at 6. After a thorough discussion, the court concluded the entrapment defense does not extend "to a remote defendant without, at least, a showing that pressure had been put upon him by the intermediary at the instruction of the government agent." *Id.* at 8. Therefore, the court affirmed the district court's refusal to instruct the jury on entrapment with respect to Bradley. *Id.* We agree with the conclusion reached in *Bradley* and find it consistent with our precedent. *See Stringer*, 902 F.2d at 1336–37; *Hodges*, 936 F.2d at 372 (no evidence that the government induced the middle-

man into helping the government "net the distant defendant").

In this case, Santcroos induced Neal to join the drug conspiracy by appealing to his sympathy. Neal knowingly and willingly accompanied Santcroos on the trip to St. Louis for the flash roll. The government agents did not know of or have contact with Neal until he appeared at the airport with Santcroos. No government agent instructed Santcroos to bring Neal along. Therefore, we find that the district court correctly refused to give an entrapment instruction with respect to Neal.

Furthermore, the evidence clearly indicates that Neal was predisposed to arrange drug transactions. A district court "may refuse to submit an entrapment instruction when the defendant exhibited a disposition to engage in the criminal activity with which he was charged" because if predisposition exists, then there is not sufficient evidence from which a reasonable jury could find entrapment. *United States v. Johnson*, 892 F.2d 707, 710 (8th Cir.1989) (citation omitted); *see Grimes*, 899 F.2d at 732. In St. Louis, Neal demonstrated that he knew the names of people he knew who could supply cocaine and he even had the phone number in his personal phone book of one such supplier, Perez, and called him from St. Louis. In addition, Neal intended to make a profit from his deal in December.[4] *See id.* at 710 (evidence that defendant intended to commit the crime to make money is evidence of predisposition). The trial court did not err here.

### III.

Neal next argues that the district court erred in refusing to instruct with respect to the defense of coercion or duress. "The defense of necessity or coercion requires both [1] a well-grounded fear of immediate death or serious injury and [2] no opportunity to avoid the threatened harm other than the commission of the

---

4. When Neal was arrested, evidence of the drug transaction was found "in the form of written calculations regarding the amount of cocaine, its cost, and the method under which the money was to be received" and "such evidence contained a written acknowledgement of quantities, prices, and allocation of profits." *United States v. Neal*, CR. 88–50001–03, slip op. at 8 (D.S.D. March 30, 1992) (sentencing memorandum).

act." *United States v. J.L.K. Jr.*, 880 F.2d 993, 995 (8th Cir.1989) (citation omitted); *accord United States v. Bailey*, 444 U.S. 394, 415, 100 S.Ct. 624, 637, 62 L.Ed.2d 575 (1980) ("[W]hen a criminal defendant is charged with escape and claims that he is entitled to an instruction on the theory of duress or necessity, he must proffer evidence of a bona fide effort to surrender [to authorities] ... as soon as the claimed duress or necessity had lost its coercive force.").

The district court rejected Neal's claim of coercion as a matter of law because "the defendant had ample opportunity over a period of months to avoid the perceived harm and therefore could not be coerced." *See United States v. Neal*, CR. 88–50001–03, slip op. at 7 (D.S.D. March 30, 1992) (sentencing memorandum). The court noted that Neal negotiated with the agents over a period of several months, located the supplier, used his own money to purchase the cocaine from the supplier, and made the arrangements for the delivery of the cocaine. *Id.* at 8. The court further noted that the delivery of the two kilograms of cocaine was to be the first shipment of a total of at least ten kilograms of cocaine. *Id.*

We agree with the district court that Neal was not entitled to an instruction on coercion because he did have an opportunity to avoid any perceived harm other than by completing the drug transaction. After September, the agents in South Dakota never contacted Neal in San Antonio except by telephone. Over the next few months, Neal never contacted the authorities in Texas or anywhere else. Furthermore, Neal specifically acknowledged at trial that he did not go to the authorities the week after the trip to St. Louis and that "[t]here was no threat at that time." *See* trial transcript, vol. III, at 404. We affirm the district court's ruling on this issue.

## IV.

■ Neal argues that the district court improperly increased his sentence because he took the stand to testify. Neal also claims that the court sentenced him in part to punish him for the "attitude" displayed by him and his lawyer. Review of the district court's sentencing memorandum refutes these arguments.

The district court made a two-level upward adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.1 because it specifically found that Neal's testimony constituted perjury and noted that upon his arrest, Neal denied that he was being arrested by law enforcement officers and even denied that he was in the clearly marked United States Marshal's office. *See Neal*, slip op. at 2–5; *see also United States v. Dunnigan*, —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (Supreme Court unanimously upholding the constitutionality of a two-level upward adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.1 based on the district court's specific finding that defendant's testimony at trial constituted perjury). With respect to Neal's other argument, the court's only reference to Neal's "attitude" was that in addition to his obstruction of justice, Neal's attitude did not warrant a two-level decrease for acceptance of responsibility. *Id.* at 11.

The district court's findings certainly are not clearly erroneous. We find that the district court properly applied the guidelines.

## V.

In conclusion, we affirm the judgment entered by the district court in this case.