46 F.3d 1137
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
UNITED STATES of America, Plaintiff-Appellee/
Cross-Appellant,
v.
Anthony C. MOLLE, Defendant-Apellant/
Cross-Appellee.
 Nos. 94-1966 & 94-1967.
 United States Court of Appeals,
 Eighth Circuit.
Submitted: Nov. 16, 1994.
Filed: Jan. 9, 1995.
 
 Before McMILLIAN, Circuit Judge, BRIGHT and REAVLEY,* Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Anthony C. Molle appeals his jury conviction of conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846. The government appeals the sentence imposed on Molle by the district court. We affirm both the conviction and the sentence.
 
 BACKGROUND
 
 2
 Molle became involved with Sam Cavallaro, a major player in a large cocaine distribution conspiracy. Several witnesses testified at trial that Molle received cocaine from Cavallaro and sold that cocaine in Kansas City, Missouri. Cavallaro was finally arrested. While Cavallaro was in custody, Molle retrieved a quantity of cocaine from the trunk of Cavallaro's car. FBI agents learned of this cocaine which had been retrieved and wished to obtain possession. They enlisted John Phipps, Cavallaro's brother-in-law, who had helped to take the cocaine from Cavallaro's car. Phipps testified at trial that he met with Molle on February 8, 1992 and that Molle then came to Phipps' home and gave him a key to a hotel room and a note. Phipps picked up the cocaine from the hotel room.
 
 
 3
 Molle was charged by indictment with two counts relating to the cocaine conspiracy. Count I of the indictment charged involvement in a conspiracy to distribute cocaine taking place over a period of almost four years. Count II charged Molle with distribution of 14 kilograms of cocaine. The basis for count II was the delivery to Phipps on February 8, 1992. Trial resulted in a guilty verdict on Count I and a hung jury on Count II.
 
 DISCUSSION
 A. Sufficiency of the Evidence
 
 4
 Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found Molle guilty of conspiracy to distribute cocaine beyond a reasonable doubt. See Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). Cavallaro travelled to pick up cocaine in other states and bring it back to Kansas City, Missouri for distribution. The evidence shows that he sometimes sent the cocaine by Federal Express to Molle's Kansas City business. Witnesses testified at trial that Molle and others sold the cocaine. Several witnesses testified that Molle paid Cavallaro up front in cash, that they had seen Cavallaro pick up the cash from Molle at his business, and that they had seen Molle pick up cocaine from Cavallaro's home. The government also introduced telephone records of numerous phone calls between Molle and Cavallaro during the time of the conspiracy and a Federal Express receipt for a package sent to Molle from Cavallaro.
 
 B. Entrapment Instruction
 
 5
 There is insufficient evidence to support an entrapment defense in this case, so the district court did not err in refusing to give an entrapment instruction. See United States v. Neal, 990 F.2d 355, 357 (8th Cir. 1993). Molle alleges that his delivery of cocaine to Phipps was the result of entrapment by law enforcement agents, because the FBI sent Phipps to recover the cocaine from Molle. The FBI tape recorded Phipps' meeting with Molle before the delivery. Molle contends certain statements on the tape show that his delivery of cocaine to Phipps was the result of entrapment.
 
 
 6
 However, an entrapment defense exists only where a criminal defendant shows government inducement to commit a crime and a lack of predisposition to commit the crime. Id. at 357-58. Molle was clearly predisposed to deliver the cocaine. The evidence shows that Molle had delivered cocaine before. The taped statements show that he was anxious to deliver the drugs and be rid of them. The tape shows that he hesitated about delivering the drugs on the very day he was approached by Phipps only because he knew people would be in the area where the drugs were hidden.
 
 
 7
 Also, the entrapment defense which Molle asserts relates only to the events forming the basis for Count II of the indictment. The existence of a possible defense to Count II has no relevance in this appeal of Molle's conviction of the charges in Count I. Molle argues that the Count I conspiracy charge is based largely on the Count II incident, so that an entrapment defense to Count II would serve as a defense to Count I. But the evidence discussed above shows that there was proof of Molle's involvement in the conspiracy that preceded the February 8 delivery of cocaine to Phipps.
 
 C. Molle's Sentence
 
 8
 The district court's factual finding that Molle played a minimal role in the conspiracy was not clearly erroneous, and so the court did not err in granting Molle a four-level downward adjustment to his offense level for minimal participation pursuant to United States Sentencing Guidelines (the "Guidelines") Sec. 3B1.2. See United States v. Westerman, 973 F.2d 1422, 1428 (8th Cir. 1992). Nor did the court err, as a matter of law, in interpreting the scope of Guidelines Sec. 3B1.2 and applying that provision to the facts of this case. See United States v. Manuel, 912 F.2d 204, 206 (8th Cir. 1990).
 
 
 9
 Molle had no dealings with the suppliers of the cocaine. The presentence report and the evidence at trial showed that the cocaine distributed in this conspiracy was supplied by members of the distant and powerful Colombian Cali drug cartel. Molle denies any knowledge of the identity or activities of the Cali Cartel members or other high-level members of the conspiracy. The government does not dispute that other members of the conspiracy accompanied Cavallaro on trips to other states to purchase cocaine from the suppliers but that Molle never picked up any cocaine. The presentence report indicates that several members of the conspiracy were connected to Kansas City organized crime but does not link Molle to organized crime activities. The government even admitted at the sentencing hearing that Molle was a "lower level" member of the conspiracy. Transcript vol. IV, at 357. The court thus correctly found that Molle played a minimal role in the conspiracy and fell under section 3B1.2 of the Guidelines, since he lacked "knowledge or understanding of the scope and structure of the enterprise" and was one of the least culpable participants in the conspiracy. U.S.S.G. Sec. 3B1.2, appl. notes 1.
 
 
 10
 The government argues that Molle did not request the downward departure based on his minimal participation and so could not have carried his burden of proving the applicability of section 3B1.2. See United States v. Rayner, 2 F.3d 286, 288 (8th Cir. 1993). Molle's attorney did not specifically invoke section 3B1.2 of the Guidelines at the sentencing hearing. But, he did argue for a lesser sentence based on the fact that Molle "probably had as little to do with [the conspiracy] as anybody ... in this bunch of people." Transcript vol. IV, at 370. He compared the activities of Molle to those of the other members of the conspiracy and urged the court to take Molle's level of participation into account in dictating his sentence.
 
 
 11
 AFFIRMED.
 
 
 
 *
 The HONORABLE THOMAS M. REAVLEY, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation