978 F.2d 1260
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tyrone TANKS, Defendant-Appellant.
 No. 92-3023.
 United States Court of Appeals, Sixth Circuit.
 Oct. 27, 1992.
 
 Before MILBURN and ALAN E. NORRIS, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Tyrone Tanks appeals his convictions for money laundering in violation of 18 U.S.C. § 1956, attempting to possess cocaine for resale in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, and using a telephone to facilitate drug trafficking in violation of 21 U.S.C. § 843(b). On appeal, the issues are (1) whether there is sufficient evidence to sustain each count of conviction, (2) whether the district court erred in failing to sever the four money laundering counts from the remainder of the indictment, (3) whether the district court erred in failing to grant defendant's motion to suppress evidence of his post-arrest statements, (4) whether the district court erred in refusing to instruct the jury on the theory of abandonment of crime, and (5) whether the district court erred in calculating the amount of drugs involved in this case for purposes of computing defendant's sentence. For the reasons that follow, we affirm.
 
 I.
 
 2
 In June 1991, defendant Tanks and his girl friend, Katarina Williams, met Andrew Chambers while gambling at a casino in Nassau. Within a few days, Tanks confided to Chambers that he was in the cocaine trafficking business and asked if Chambers knew of any cocaine suppliers in the Nassau area. Tanks told Chambers that he was dissatisfied with his current cocaine supplier in Long Beach, California, and the men entered into discussions concerning the price and delivery of cocaine. Before defendant left the island, he agreed to call Chambers and arrange for Chambers to visit him in Cincinnati, Ohio.
 
 
 3
 Unknown to Tanks, Chambers was an undercover operative for the Drug Enforcement Administration ("DEA") who was working in the Bahamas on another unrelated case. Chambers contacted Cincinnati DEA and arranged to continue the investigation. He then recorded telephone conversations with defendant during which he indicated his plans to bring 15 kilograms of cocaine to Tanks in Cincinnati. Tanks replied, "I said I'm ready! I got all the party supplies." When Chambers asked Tanks, "How do you want to work it?" Tanks answered, "... Man, I got it, Man. I told you the reservations is all ready. Everybody booked up." Brief of Appellee at 3; Exhibits 2T-3T. At another point during the investigation, Tanks told Chambers in a tape recorded conversation that he would take 20 kilograms of cocaine: "I'll try to take your whole load, Man. Serious. I'm saying if you--I mean, if you've got it, I will take it. I can get--I can get 20 of them out. Do you hear me?" Tanks later added, "I am talking about no less than 20." J.A. 105; see J.A. 58.
 
 
 4
 To implement this plan, Tanks had his girl friend wire money to Chambers to purchase an airplane ticket to Cincinnati. When Chambers arrived in Cincinnati, he arranged a meeting with Tanks in a room at the downtown Holiday Inn which had been equipped by DEA to permit audio and video monitoring. At their meeting in this hotel room on June 19, 1991, Chambers referred to twenty "birds" and Tanks stated that his "paper" was ready. The price discussed was $11,000 per kilogram, Tanks indicating that he could make a substantial profit because he could sell individual ounces for a thousand dollars.
 
 
 5
 The next day, on June 20, 1991, Tanks returned to the hotel room to meet with Chambers, this time carrying about $21,000 in cash. With him was Kent Farmer, an associate who was carrying a loaded pistol which, according to a sales slip discovered during the search of Tanks' house, had been bought in California by Tanks.
 
 
 6
 Shortly after his arrest, and following the usual Miranda warnings, defendant Tanks admitted his cocaine trafficking and provided agents with a history of his activities that began in 1985 while he was in the United States Navy. He described how, upon his return to Cincinnati, he continued to deal with his California connections who sold him 16 kilograms of cocaine per month for approximately ten months. He admitted that he and some associates were collecting money to complete the transaction with Chambers when he was arrested.
 
 
 7
 All this evidence was introduced against defendant at his trial together with testimony from various automobile dealers that defendant used cash to purchase a 1986 Cadillac, a 1984 Mercedes-Benz 500SEL, a 1985 Jeep Cherokee, and a 1986 Mercury Sable. The certificates of title for these vehicles showed that the Cadillac was titled in defendant's name, the Mercedes-Benz in Rochelle Tanks' name, and the Jeep and the Sable in the name of Katarina Williams, Tanks' girl friend. In his statement to DEA task force officers, defendant admitted that the automobiles were purchased with proceeds from drug trafficking. J.A. 71-72. Defendant's tax returns were offered in evidence to show he reported earnings of only $8,640 in 1988 and $3,747 in 1989. He did not file a return for 1990.
 
 
 8
 On September 9, 1991, a trial jury found defendant guilty of all counts of the indictment. After a sentencing hearing on December 20, 1991, defendant was sentenced to twenty years on Counts 1 through 5 of the indictment with the sentences to be served concurrently. He received four-year sentences on Counts 6 and 7 to be served concurrently with the sentence imposed on Counts 1 through 5. This timely appeal followed.
 
 II.
 A.
 
 9
 Defendant argues that his motion for judgment of acquittal as to the money laundering charges in Counts 1 through 4 should have been granted because no proof was offered to show that the automobiles mentioned in those counts were purchased with proceeds from the unlawful distribution of cocaine, as alleged in the indictment. The crimes charged in Counts 1 through 4 are defined and penalized by 18 U.S.C. § 1956(a)(1).[1] Subsection (c)(1) of 18 U.S.C. § 1956 defines "unlawful activity" as "activity that constitutes a felony under State, Federal, or foreign law...." Defendant argues that the government failed to prove that the money he used to buy the automobiles in question was the proceeds of a state or federal felony.
 
 
 10
 This court reviews the denial of a Rule 29 motion for judgment of acquittal due to insufficient evidence under the same standards as the district court. United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992). "Evidence is sufficient to support a criminal conviction if, after reviewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." Id. (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 11
 Viewed in this light, there is ample evidence in the record to sustain a finding that the cash invested in the automobiles in question came from felony drug trafficking. After his arrest, defendant admitted a long history of cocaine dealing and confessed that the money for the automobiles came from drug trafficking. This confession was duly admitted into evidence against him. As the government correctly points out, all forms of cocaine trafficking are felonies under federal law, 21 U.S.C. § 841, as are attempts at trafficking in cocaine. 21 U.S.C. § 846. Thus, defendant's admission that the cash used to purchase the automobiles in question was the proceeds of drug trafficking constituted a virtual admission that the automobiles were purchased with proceeds derived from federal felonies.
 
 
 12
 The district court instructed the jury that it must find that the cash defendant used to purchase the automobiles in question "represented the proceeds of the distribution of cocaine...." J.A. 82. The jury had before it defendant's admission that the money came from his drug trafficking, which was ample evidence to support a finding that the cash in question represented the proceeds of one or more federal felonies. The district court was, therefore, correct in denying defendant's motion for a judgment of acquittal.[2]
 
 B.
 
 13
 Defendant next argues that his motion for judgment of acquittal as to Count 5 should have been granted because the government's evidence did not establish his intent to attempt to possess cocaine for the purpose of distributing it. He argues that his action in leaving the Holiday Inn room during the course of negotiations is evidence that he had abandoned his criminal project and that these actions "rebut Tanks' presumed criminal intent and require his finding of guilty on Count 5 to be reversed." Brief of Appellant at 22.
 
 
 14
 To prove an attempt, the government must show a defendant's intent together with the commission of an act that "constitutes a substantial step towards commission of the proscribed criminal activity." U.S. v. Pennyman, 889 F.2d 104, 106 (6th Cir.1989). In this case, defendant's intent is established by the same actions that constitute his substantial steps toward the commission of the crime. The audio and video tape recordings introduced into evidence show defendant stating his intent to purchase cocaine. Evidence was also introduced that defendant arranged and financed Chambers' travel from the Bahamas to Cincinnati, that defendant traveled to the Holiday Inn where Chambers was staying in order to discuss arrangements for the delivery of cocaine, that he returned to this location with over $20,000 in cash as partial payment for cocaine, that he transferred this cash to Chambers, and he came equipped with an armed guard. Thus, the jury could find that his intent was unmistakable.
 
 
 15
 In United States v. Ramos, 861 F.2d 461 (6th Cir.1988), cert. denied, 489 U.S. 1071 and 490 U.S. 1011 (1989), this court held that defendants had taken a substantial step towards possession of cocaine with intent to distribute when they responded to a telephone call to pick up their cocaine. They drove to the designated residence and entered it, after which they were promptly arrested. The money to complete the transaction was found in their vehicle parked outside. In the present case, the evidence is even stronger because Tanks actually delivered a substantial partial payment. Viewed in the light most favorable to the government, we hold that there is ample evidence to support defendant's conviction on Count 5.
 
 C.
 
 16
 Defendant also contends that the district court erred in failing to grant his motion for judgment of acquittal as to Counts 6 and 7, which charge the unlawful use of a telephone in the facilitation of a drug felony. His only argument is that the government must first prove the predicate offense, namely, attempting to possess cocaine with intent to distribute, as charged in Count 5, and that it failed to do so for the reasons mentioned above. Thus, defendant's argument in connection with Counts 6 and 7 depends entirely on his successful challenge to Count 5. That challenge has failed, and we hold that this challenge must also fail.
 
 D.
 
 17
 Defendant next argues that the district court erred in failing to sever Counts 1 through 4 from Counts 5 through 7 and to grant separate trials on these groups of offenses. He argues that Federal Rule of Criminal Procedure 14 requires this relief because he was prejudiced by the joinder of these offenses under Rule 8(a).
 
 
 18
 Unfortunately for defendant, it does not appear that he has preserved this issue for review. In United States v. Swift, 809 F.2d 320, 323 (6th Cir.1987), this court established a rule that a severance motion would be "deemed waived if it is not renewed at the end of the evidence." Accord United States v. Sturman, 951 F.2d 1466, 1476 (6th Cir.1991), cert. denied, 112 S.Ct. 2964 (1992).
 
 
 19
 Even if the matter had been preserved for review, defendant has shown no prejudice from the alleged misjoinder.
 
 
 20
 A Rule 14 motion is left to the court's discretion, and the denial of a severance "will not be disturbed on review unless the district court abused its discretion in denying the motion." United States v. Gallo, 763 F.2d 1504, 1524-25 (6th Cir.1985), cert. denied, 474 U.S. 1068 (1986) (citations omitted). To establish an abuse of discretion requires "a strong showing of prejudice." Id. at 1525.
 
 
 21
 Swift, 809 F.2d at 322. Defendant hardly hazards a guess as to how he might have been prejudiced by the joinder of the counts in question. He merely asserts that "[a]ssociation with drugs of a Defendant by misjoinder is highly inflammatory to a jury and highly probable such characterization will influence the jury's verdict." Brief of Appellant at 25. However, both groups of counts associated defendant with drugs, and therefore this is not a situation in which a jury might have been inflamed against a defendant in a non-drug case by the joinder of unrelated drug charges. Thus, defendant has not made the "strong showing of prejudice" required to establish an abuse of the district court's discretion. Juries are presumed capable of sorting out evidence and considering each count of an indictment separately as they are instructed to do. Id. at 323; United States v. Frazier, 584 F.2d 790, 795 (6th Cir.1978). Thus, defendant's challenge to the joinder in question fails procedurally and on its merits as well.
 
 E.
 
 22
 Defendant argues that the district court erred in failing to suppress his post-arrest admissions because the "[t]otality of the circumstances should require the United States to tape record the statements of a supposedly cooperative individual so the court can see what occurred at the time of arrest." Brief of Appellant at 26. In other words, defendant contends that only a tape recorded admission can be used in evidence against the accused in a criminal prosecution. Not surprisingly, defendant cites no authority for this proposition.
 
 
 23
 It is the duty of the district court to determine whether statements offered in evidence against a defendant were voluntarily made. It does this by considering the totality of the circumstances presented to it, Arizona v. Fulminante, --- U.S. ----, 111 S.Ct. 1246, 1251 (1991), and determining whether a preponderance of the evidence supports the conclusion that the statements were voluntarily made. Colorado v. Connelly, 479 U.S. 157, 168 (1986); Lego v. Twomey, 404 U.S. 477, 489 (1972). The agents who interviewed defendant after his arrest testified that he was properly warned of his Miranda rights and that his statements were uncoerced and voluntarily made. The district court did not err in concluding from this proof that defendant's statements were voluntarily made and thus admissible in evidence against him.
 
 F.
 
 24
 Defendant moved the district court to instruct the jury on the subject of abandonment and renunciation of criminal activity. The district court refused this instruction after which the defendant rested without testifying. He argues now that, had the court agreed to give his requested instruction, he would have testified that he left the room at the Holiday Inn, not to continue the process of collecting money to complete his purchase, as the government argued, but with the idea of abandoning the purchase of cocaine and renouncing his project entirely.
 
 
 25
 It is the rule in this circuit that "when a theory of defense finds some support in the evidence and in the law, a defendant is entitled to some mention of that theory in the instructions." United States v. Garner, 529 F.2d 962, 970 (6th Cir.), cert. denied, 426 U.S. 922 and 429 U.S. 850 (1976) (emphasis added); accord United States v. Duncan, 850 F.2d 1104, 1117 (6th Cir.1988). However, as the district court correctly noted, this circuit has not recognized voluntary abandonment or renunciation as a valid defense to an attempt charge. The difficulty, of course, is that a defendant may have taken a substantial step towards the completion of the crime, thus completing his attempt, before deciding to renounce or abandon the consummation of the offense.
 
 
 26
 Section 5.03 of the Pattern Criminal Jury Instructions issued by the Sixth Circuit's District Judges' Association (1991) provides as follows:
 
 
 27
 No federal cases have explicitly recognized voluntary abandonment or renunciation as a valid defense to an attempt charge. The closest the federal courts have come are two cases which assumed, without deciding, that even if abandonment or renunciation is a defense, the facts of the particular cases did not support a finding that a voluntary abandonment or renunciation had occurred. See United States v. Bailey, 834 F.2d 218, 226-27 (1st Cir.1987); and United States v. McDowell, 705 F.2d 426, 428 (11th Cir.1983). See generally Model Penal Code § 5.01(4).
 
 
 28
 As this court pointed out in Garner, a defendant is not entitled to an instruction on his theory of defense unless the defense is recognized in law. The Model Penal Code, § 5.01(4), recognizes the defense, but this section of the Model Penal Code has not been adopted by this circuit.[3] Thus, abandonment is not a recognized defense in the law of the circuit.
 
 
 29
 Regardless, there is not any evidentiary support for such an instruction in this case. Defendant chose not to testify, and the record shows only that he did his very best to consummate the drug transaction he had planned. The bare fact that defendant left the Holiday Inn in Cincinnati for a period of time does not constitute evidence of abandonment when that fact is susceptible to the more reasonable interpretation that this hiatus was necessary for the purpose of collecting additional funds with which to complete the transaction. In Tatum v. United States, 190 F.2d 612, 615 (D.C.Cir.1951), the court observed that attempts to formulate precise quantitative measures of the amount of evidence necessary to raise an issue to the level requiring an instruction "can produce no more than an illusory definiteness." Because there is no evidence of abandonment or renunciation in this case, and because it is questionable whether this circuit even recognizes the defense, defendant was not entitled to the instruction he requested.
 
 G.
 
 30
 Defendant's final argument is that the district court erred in computing his sentence based on a finding that defendant was attempting to buy 20 kilograms of cocaine in his transactions with Chambers. Under United States Sentencing Guidelines § 2D1.1(c)5, the possession or attempted possession of between 15 and 50 kilograms of cocaine results in a base offense level of thirty-four. Section 2D1.4 of the Guidelines provides that "[i]f a defendant is convicted of ... an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the ... attempt had been completed."
 
 
 31
 Defendant argues that the money he brought to the meeting at the Holiday Inn was sufficient to buy something less than 2 kilograms of cocaine and that the district court should have used that amount to arrive at a base offense level of 26. This ignores defendant's tape recorded conversations with Chambers in which defendant said, "I'll try to take your whole load, Man. Serious. I'm saying if you--I mean, if you've got it, I will take it. I can get--I can get 20 of them out. Do you hear me?" Later in the same conversation Tanks stated, "I am talking about no less than 20." J.A. 105.
 
 On review, this court must
 
 32
 give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.
 
 
 33
 18 U.S.C. § 3742(e). The district court's finding that defendant was attempting the possession of 20 kilograms of cocaine with the intent to resell it is not clearly erroneous. Application Note 1 to U.S.S.G. § 2D1.4 provides:
 
 
 34
 ... If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount.
 
 
 35
 Because the amount under negotiation was 20 kilograms, the district court properly used that figure in its sentencing calculations. See United States v. Gonzales, 929 F.2d 213, 216 (6th Cir.1991); United States v. Perez, 871 F.2d 45, 48 (6th Cir.), cert. denied, 492 U.S. 910 (1989).
 
 III.
 
 36
 For the reasons stated, the judgment of the district court is AFFIRMED in all respects.
 
 
 
 [1]
 § 1956. Laundering of monetary instruments (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
 * * *
 (B) knowing that the transaction is designed in whole or in part--
 (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;
 * * *
 shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.
 
 
 [2]
 Defendant did not challenge the district court's instructions at trial, nor does he do so on appeal. The instructions are not included in the joint appendix
 
 
 [3]
 Model Penal Code § 5.01(4) provides in pertinent part:
 When the actor's conduct would otherwise constitute an attempt ..., it is an affirmative defense that he abandon his effort to commit the crime or otherwise prevent its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose.