UNITED STATES of America,
Plaintiff–Appellee,

v.

Mack J. SHELTON, Defendant–Appellant.

No. 93–5892.

United States Court of Appeals,
Sixth Circuit.

Argued March 18, 1994.

Decided July 26, 1994.

Michael J. Mitchell, Asst. U.S. Atty. (argued and briefed), Hugh B. Ward, Jr., Office of U.S. Atty., Knoxville, TN, for plaintiff-appellee.

Anthony Philip Lomonaco, Vaughan & Zuker, Knoxville, TN (argued and briefed), for defendant-appellant.

Before: KEITH and NELSON, Circuit Judges; and JOINER, Senior District Judge.[*]

. JOINER, Senior District Judge.

Defendant Mack J. Shelton appeals his conviction for attempted robbery, 18 U.S.C. § 1951, as charged in one count of a ten-count indictment, claiming that the court erred in refusing to instruct the jury that withdrawal was a defense to the charge. Shelton also contends that the district court erred in denying his motion to suppress evidence under Title III of the Omnibus Crime Control Act, 18 U.S.C. §§ 2510 *et seq.*, and 18 U.S.C. § 3504. We find both claims of error to be without merit, and affirm.

[*] The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

## I.

## A.

Shelton was paroled in January 1992 following a lengthy incarceration for state and federal offenses. Based upon the unchallenged guilty verdicts returned in this case, the record reveals that Shelton entered into a conspiracy to commit armed robberies shortly after his parole, and this conspiracy lasted until his arrest in October 1992. During the six-month period of April to October 1992, Shelton and others committed three robberies of pharmacies, two of which involved the use of a firearm. Stephen Rolen was one of the persons recruited by Shelton, and testified that he participated in the robberies of the pharmacies. The robberies were carried out in a similar fashion. Shelton selected the target and supplied guns and masks. Equipped with a police scanner and sometimes with walkie-talkies, Shelton waited in the car until the robbery was completed. Shelton and his confederates then divided the money and drugs.

Counts 8 and 9 of the indictment concerned the attempt to rob Goody's Clothing Store on October 11, 1992. The government learned through an informer about Shelton's plan to rob Goody's. Shelton had recruited a Goody's employee to cooperate, and planned for Rolen to lie in wait for the head cashier as she left the store with the night deposit. Rolen was to commit the robbery and drive away in the cashier's car. Shelton met with the informer several hours before the planned robbery, and discussed the type of car that the cashier drove and the clothing she was wearing that day. Shelton told the informer that he intended to go into the store to determine whether the security guard was armed.

Shelton supplied Rolen with a 9mm semi-automatic Browning pistol, and advised him as they pulled into the store's parking lot to show the gun if anyone tried to interfere. Rolen was concerned about whether the cashier's car had an automatic transmission. Shelton got out of the car and looked inside the cashier's car, and nodded to Rolen to confirm that the car had an automatic transmission. Shelton then went into the store for a few moments and returned to the car.

Shelton then said that he wanted to make a phone call. Shelton's car was surrounded by agents as he drove from the parking lot. Shelton said, "We've been set up, Stevie," and led the agents on a high-speed chase, during which Rolen threw the gun out of the car and later jumped out himself. Rolen was arrested and the gun was retrieved. Shelton escaped, but was apprehended the next day. Shelton was charged in a superseding indictment with the conspiracy, robberies and use of weapons set forth above, and also was charged with the attempted robbery of Goody's (count 8); use of a firearm in connection with that attempt; and two counts of being a felon in possession of a firearm.

At trial, Shelton testified that Rolen and the informer had formulated the plan to rob Goody's, and that he had intended to participate but changed his mind as he drove into the parking lot. Shelton claimed that he went into the store simply to see if a friend was working. Defense counsel requested the court to instruct the jury that Shelton's alleged withdrawal from the attempt constituted a defense to the charge. The court refused the instruction, but included in the theory of the defense instruction Shelton's argument that he abandoned the attempted robbery before an overt act was accomplished. On appeal, Shelton claims that the court's refusal to charge the jury that withdrawal is a defense requires reversal of his count 8 conviction for attempted robbery.

## B.

While he was in jail pending trial, Shelton had access to a pay phone from which he could make collect calls. His sister, Brenda Sewell, obtained a three-way calling system, which allowed Shelton to call her and then be patched through to other persons. Shelton states that he used this phone to contact Larry Blair, a hairdresser who allegedly was to testify that Shelton had an appointment on the day of one of the robberies.

Shelton filed his notice of alibi defense on February 26, 1993, listing Blair. On March 1, 1993, Blair was served with a subpoena,

issued on February 22, requiring him to testify before a grand jury. Because Blair's subpoena was issued before Shelton filed his notice of alibi defense, Shelton inferred that Blair's identity was uncovered through a wiretap of Sewell's phone. He buttressed this inference with the fact that Blair was asked before the grand jury about a loan he had made to Sewell. Blair stated in an affidavit filed after his grand jury appearance, that he believed that the government could have learned about that loan only through a wiretap of Sewell's phone.

Shelton filed a motion to suppress evidence under Title III of the Omnibus Crime Control Act (OCCA), 18 U.S.C. §§ 2510 et seq., requesting that he be advised whether he was an "aggrieved person"[1] under OCCA and requesting further that the government be required to affirm or deny the existence of a wiretap. He later amended his motion to request copies of any tapes or transcripts resulting from electronic surveillance.[2] The government responded, stating that: (1) it did not intend to offer into evidence the contents of any wire or oral communication intercepted pursuant to 18 U.S.C. § 2510 or evidence derived therefrom; and (2) Shelton was not an aggrieved person "in this case" of any electronic surveillance. The government filed an additional response under seal which has been provided to this court as well.

Shelton's motion to suppress was referred to a magistrate judge, who recommended that the motion be denied because the government affirmed that it did not intend to introduce into evidence the contents of any intercepted communication or evidence derived therefrom. Thus, "there is no evidence to be suppressed." The district court adopted the magistrate judge's report and recommendation and denied the motion.

Shelton was found guilty on all ten counts, and was sentenced to a term of 802 months. No appeal is taken from the sentence.

## II.

### A. Withdrawal Defense

■ Shelton claims that the district court erred in refusing his request that the jury be instructed that withdrawal is a defense to an attempt crime. "[W]hen a theory of defense finds some support in the evidence *and in the law,* a defendant is entitled to some mention of that theory in the instructions." *United States v. Garner,* 529 F.2d 962, 970 (6th Cir.) (emphasis added), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376, 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 124 (1976). *Accord United States v. Burge,* 990 F.2d 244, 249 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2379, 124 L.Ed.2d 283 (1993). When the legal theory underlying the requested instruction is erroneous, however, the trial court has no duty to give the requested instruction. *United States v. Sassak,* 881 F.2d 276, 278 (6th Cir.1989).

■ As the district court and the parties have observed, this court has never determined that withdrawal constitutes a defense to an attempt crime. To prove an attempt, the government must show a defendant's intent to commit the proscribed criminal conduct together with the commission of an act that "constitutes a substantial step towards commission of the proscribed criminal activity." *United States v. Pennyman,* 889 F.2d 104, 106 (6th Cir.1989). In *United States v. Tanks,* No. 92–3023, 1992 WL 317179, 1992 U.S.App. LEXIS 28889 (6th Cir. Oct. 27, 1992), this court rejected the defendant's challenge to the district court's refusal to instruct the jury that abandonment was a defense to the charge of attempted possession of cocaine. "The difficulty, of course, is that a defendant may have taken a substantial step towards the completion of the crime, thus completing his attempt, before deciding to renounce or abandon the consummation of the offense." *Id.* at *5, 1992 U.S. App. LEXIS 28889, at *15. Stating that Tanks was *not* entitled to an instruction on a theory of defense which had not been recognized, the

---

1. An "aggrieved person" is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed[.]" 18 U.S.C. § 2510(11).

2. Shelton also moved to dismiss the indictment based on alleged abuse of the grand jury process, but does not challenge the district court's denial of that motion.

court went on to note that the record lacked evidentiary support for a withdrawal or abandonment instruction in any event.[3]

In the absence of controlling authority from this court, Shelton relies on the Model Penal Code § 5.01(4) and Tenn.Code Ann. § 39–12–104, both of which recognize an affirmative defense of abandonment under circumstances manifesting a complete and voluntary renunciation of criminal purpose. According to the Model Penal Code, renunciation is not voluntary "if it is motivated, in whole or in part, by circumstances ... that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose." Likewise, renunciation is not complete "if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim." Model Penal Code § 5.01(4). The Model Penal Code relies on two related considerations as justifications for recognizing the defense. First, allowance of the defense recognizes that the actor's conduct no longer poses a danger to society. Second, the availability of the defense provides actors with a "motive for desisting from their criminal designs, thereby diminishing the risk that the substantive crime will be committed." Model Penal Code § 5.01 comment 8 (Official Draft 1985).

We decline to follow the approach of the Model Penal Code and Tennessee law, and hold that withdrawal, abandonment and renunciation, however characterized, do not provide a defense to an attempt crime. As noted, the attempt crime is complete with proof of intent together with acts constituting a substantial step toward commission of the substantive offense. When a defendant withdraws prior to forming the necessary intent or taking a substantial step toward the commission of the offense, the essential elements of the crime cannot be proved. At this point, the question whether a defendant has withdrawn is synonymous with whether he has committed the offense. After a defendant has evidenced the necessary intent and has committed an act constituting a substantial step toward the commission of the offense, he has committed the crime of attempt, and can withdraw only from the commission of the substantive offense. We are not persuaded that the availability of a withdrawal defense would provide an incentive or motive to desist from the commission of an offense, especially since the success of the defense presupposes a criminal trial at which the issue would be submitted to the jury for decision. A remote chance of acquittal would appear to have an even more remote chance of deterring conduct. We recognize, of course, that attempt crimes pose unique issues. However, the interest of defendants in not being convicted for mere "thoughts, desires or motives" is adequately addressed by the government's burden of proving that the defendant took a substantial step toward the commission of the substantive offense.[4] *Pennyman,* 889 F.2d at 106 (quoting *United States v. Reeves,* 794 F.2d 1101, 1104 (6th Cir.), *cert.*

---

**3.** *Accord, United States v. Allen,* No. 92–6703, 1993 WL 445082, 1993 U.S.App. LEXIS 28778 (6th Cir. Nov. 2, 1993). The approach of other circuits is similar. *United States v. Bailey,* 834 F.2d 218, 227 (1st Cir.1987) (expressing no view as to whether abandonment constituted defense, and holding that district court did not err in refusing to instruct on defense because there was no evidence of complete and voluntary renunciation of criminal purpose); *United States v. McDowell,* 705 F.2d 426 (11th Cir.1983), *reh'g denied,* 714 F.2d 106 (11th Cir.1983) (assuming renunciation a valid defense, defendant did not produce evidence of complete and voluntary renunciation). The Ninth Circuit refused to recognize the defense in *United States v. Bussey,* 507 F.2d 1096, 1098 (9th Cir.1974) ("A voluntary abandonment of an attempt which has proceeded well beyond preparation as here, will not bar a conviction for the attempt."). *But see United States*

*v. Joyce,* 693 F.2d 838 (8th Cir.1982) (defendant's refusal to purchase drugs after obtaining $22,000 and flying to St. Louis to do so constituted defense to attempt charge, regardless of reason for refusal; defendant abandoned intent prior to performing necessary and substantial step toward commission of offense.).

**4.** This court requires that the substantial step toward the commission of the offense consist of objective acts which mark the conduct as criminal in nature. " '[T]he defendant's objective conduct, taken as a whole, must unequivocally corroborate the required subjective intent to [commit the offense].' " *Pennyman,* 889 F.2d at 106 (quoting *United States v. Pennell,* 737 F.2d 521, 525 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985)).

*denied,* 479 U.S. 963, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986)).

■ Additionally, we note that the only evidence of abandonment in this case is Shelton's self-serving testimony that he had a change of heart when he drove into the Goody's parking lot. There is no objective evidence corroborating this alleged change of heart; rather, all of Shelton's actions were consistent with the planned commission of the offense. Like in the other robberies, Shelton did not intend to confront the victim, point a weapon and take the money. Rather, he supplied the plan and the gun, and intended to remain close by in the car while Rolen did the deed. After arriving at Goody's, Shelton advised Rolen to show the gun during the robbery, and confirmed for him that the get-away car had an automatic transmission. In light of these facts, Shelton's testimony was plainly inadequate to obligate the district court to instruct the jury on withdrawal, even if we were to recognize the defense. In sum, we find no error in the district court's refusal to instruct the jury as requested.

## B. Motion to Suppress

Shelton claims that he is an aggrieved person under the OCCA, and that the government therefore is required to affirm or deny whether electronic surveillance occurred. Shelton further claims that, if electronic surveillance occurred, the government should be required on remand to produce copies of the resulting tapes and transcripts.

■ Title III of the OCCA is designed to prevent the unlawful interception and disclosure of wire or oral communication. 18 U.S.C. § 2511. Interception in violation of the statute's provisions precludes the use of the communication as evidence in any trial or other proceeding. 18 U.S.C. § 2515. The statute provides procedures for court ordered electronic surveillance, 18 U.S.C. § 2518, and authorizes disclosure of the communications which result, 18 U.S.C. § 2517(3). The statute further provides that an aggrieved person may file a motion to suppress the contents of intercepted communications on grounds that (i) the interception was unlawful; (ii) the order authorizing the interception was insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization. 18 U.S.C. § 2518(10)(a). When a motion to suppress is made, the district court has the discretion to require disclosure of the intercepted communications or evidence derived from the surveillance. *Id.*

The government's duty to affirm or deny unlawful surveillance arises under a related statute, 18 U.S.C. § 3504, entitled "Litigation concerning sources of evidence." Section 3504 establishes the procedures to be followed when a claim of inadmissibility is made by an alleged aggrieved person. *Gelbard v. United States,* 408 U.S. 41, 54, 92 S.Ct. 2357, 2364, 33 L.Ed.2d 179 (1972). Section 3504 provides in pertinent part:

(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—

(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act;

. . . .

(b) As used in. this section "unlawful act" means any act [involving] the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title [the OCCA]) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto.

18 U.S.C. § 3504.

■ Section 3504 comes into play only on a claim that evidence is inadmissible. Likewise, the remedy potentially available to Shelton under the OCCA is the suppression of evidence. 18 U.S.C. §§ 2515, 2518(10)(a). In apparent recognition of this, Shelton styled his motion in the district court as one seeking the suppression of evidence. At no time, however, did Shelton identify evidence which he believed the government intended to use at trial. Nor, on appeal, does Shelton

point to evidence actually admitted at trial which resulted from electronic surveillance. We have carefully reviewed the record, including the materials filed by the government under seal, and can discern no such evidence.[5] Thus, Shelton has not demonstrated a causal link between the surveillance which he thinks took place and the introduction of evidence at trial.

On this record, we agree with the court in *United States v. Robins,* 978 F.2d 881 (5th Cir.1992) that § 3504 simply does not apply.

> By its terms, Section 3504(a)(1) does not apply to Robins' case. Robins' pretrial motion did not point to *evidence* to be used by the government in the prosecution having a causal link to illegal monitoring. 18 U.S.C. § 3504(a)(1) applies only when the defendant claims "evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act." ... Robins' pretrial motion did not point to any specific statements or other evidence as having been *obtained* from an unlawful surveillance, and thus the threshold requirement of Section 3504(a)(1) was not crossed.

*Id.* at 887 (emphasis in original).

Shelton has not demonstrated that evidence obtained through electronic surveillance was admitted against him at trial, and, consequently, he is not entitled to relief under either the OCCA or § 3504. His challenge to the district court's denial of his motion to suppress is without merit.

**AFFIRMED.**

---

**5.** The only evidence allegedly uncovered through a suspected wiretap was Blair's identity. Shelton mistakenly assumes that no other evidence could have led the government to Blair. Moreover, Shelton himself listed Blair as an alibi witness, although his expectation was frustrated at trial. Blair testified that Shelton called him from jail and asked him to "put his name down on September 10th" as having had an appointment. Blair did as he was asked, although Shelton did not have an appointment that day and did not have his hair cut.