# United States Court of Appeals
## For the First Circuit

No. 05-1451

UNITED STATES OF AMERICA,

Appellee,

v.

DUSTIN BUTTRICK,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Lynch, Circuit Judge,
Campbell and Cyr, Senior Circuit Judges.

Michael J. Iacopino, with whom Brennan Caron Lenehan & Iacopino was on brief, for appellant.
Peter E. Papps, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, was on brief, for appellee.

November 23, 2005

**LYNCH**, **Circuit Judge**.  Dustin Buttrick, a twenty-two-year-old man living in Elliot, Maine, crossed over the state line into New Hampshire, having arranged to rendezvous with a fourteen-year-old girl he met over the Internet to have sex.  The "girl" turned out to have been a fiction; Buttrick was caught in a sting operation set up by the Portsmouth, New Hampshire, Police Department.  There is no dispute that the "girl" told Buttrick that she was underage, and there is no dispute that he crossed over the state line for the anticipated tryst.  Buttrick never found his intended paramour; the Portsmouth police arrested him first.  His defense was that mere curiosity drove him; although he brought along condoms, as he had told the "girl" that he would, he said that he had never intended to have sex with her.

On September 9, 2004, a jury found Buttrick guilty of traveling in interstate commerce with the purpose of engaging in illicit sexual conduct with another person between twelve and sixteen years of age, in violation of 18 U.S.C. § 2423(b).  See also 18 U.S.C. §§ 2423(f), 2241(c).  Buttrick was sentenced to eighteen months in prison, followed by a five-year period of supervised release.

This appeal addresses two legal questions previously raised in defendant's motion for a judgment of acquittal or, in the alternative, a new trial.  Buttrick argues that the statute of conviction, 18 U.S.C. § 2423(b), is unconstitutional as applied to

him because it punishes mere thought and burdens the right to travel. The statute provides, in relevant part:

> A person who travels in interstate commerce . . . for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

Buttrick's second argument is that the district court erred in denying his request for a jury instruction, drawn from an affirmative defense under the Model Penal Code, on abandonment or renunciation of intent to commit the crime.

We hold that the claim of statutory unconstitutionality is meritless and devolves into nothing more than an insufficiency of evidence claim. On the second issue, we agree with the district court that even if, in theory, an abandonment defense were ever available in response to a prosecution under 18 U.S.C. § 2423(b), a question we do not address, the proffered instruction was properly rejected because it was an erroneous statement of the law. We affirm.

**I.**

The facts recited come largely from Buttrick's testimony. That testimony includes the evidence as to which the proposed instruction was directed and provides the basis for evaluating the claims that the statute was unconstitutionally applied. There is no need to discuss the government's additional evidence of guilt.

Buttrick testified as follows. Before the incident in question, he had visited chat rooms thirty or forty times. He had explicit sexual conversations with women seven or eight times and made arrangements to meet three or four of these women.

On June 8, 2003, Buttrick logged into a Yahoo! chat room. He was attracted to an individual using the screen name "baybeedaw188" and contacted her via instant messaging. He asked the individual her age, and she identified herself as a fourteen-year-old girl. The chat quickly became sexually graphic, with Buttrick suggesting that they get together to "fool around." He also said to "baybeedaw188," untruthfully, that he was only nineteen years old, that he was from Dover, New Hampshire, and that he had "fooled around" before with someone he met online.

Buttrick testified at trial that he had no intent to go any further than conversation -- that it was all just fantasy. He continued the fantasy, replying to e-mail messages from "baybeedaw188" and engaging in other sexually explicit online conversations with her. During a June 22 chat room conversation, however, he went a step beyond fantasy and suggested that they meet in person. He and "baybeedaw188" agreed to meet at 8:30 a.m. on Tuesday, June 24, 2003, at the New Hampshire State Liquor Store on the Route 1 traffic circle in Portsmouth, New Hampshire.

Buttrick testified that he did not believe the statements from "baybeedaw188" that she was fourteen years old. Over the

-4-

weekend before the meeting, Buttrick talked about these chat room conversations with a friend, Tom Whelan, who was a part-time police officer. Buttrick told Whelan about the meeting, saying he "would just drive by and take a look" and that he "was curious to see who [he] was talking to." Whelan advised him that it was a bad idea.

Still, on Monday, June 23, Buttrick and "baybeedaw188" had another sexual chat room conversation, during which they confirmed that they would meet as planned the next morning. According to the testimony of the detective behind the sting operation, Buttrick told "baybeedawl88" that he would bring "Durex"-brand condoms with him to their meeting. Buttrick's testimony was that he had no intent to perform any sexual act with her or even to meet her. He said that he intended to drive to the meeting place in New Hampshire from his home in Maine, about five miles away, "just see who this person was. I was just curious."

On Tuesday, June 24, as he dressed before driving to the meeting, Buttrick grabbed various items from his dresser, including condoms. He testified that he did not bring the condoms to have sex with "baybeedaw188"; rather, he said, "I've been going out a lot and I try to make it a habit of carrying condoms on me." He also testified that as he drove to the meeting, it still had not crossed his mind that perhaps he would have sex with her after all.

Buttrick drove across the state line toward the meeting place. At the traffic circle in Portsmouth, he drove around the

circle once, then pulled off to look toward the liquor store to see if someone was in the parking lot. He then drove around the circle another time and again pulled off. He intended, he testified, to get on the traffic circle a third time. Before he could do so, however, he was pulled over by the Portsmouth police and arrested. A detective testified that he recovered two condoms from Buttrick's front pocket, one of which was a "Durex"-brand condom.

Buttrick admitted at trial that during a post-arrest interview by the police, he was asked whether "the purpose of this whole thing" was that he "wanted to have sex with a 14-year-old girl," and that he answered, "Yeah." He testified, however, that what he said to the police was not an admission of guilt, just an acknowledgment that he knew why he had been arrested. He admitted that when he was asked in the post-arrest interview what his purpose was in crossing the state line, he had said that he did not know, but that his intention was to drive home from the traffic circle because he "knew it wasn't a good idea." He further admitted that when asked at the interview whether he would have stopped had he seen a fourteen-year-old-girl in the parking lot, he had replied, "no," and said that he "would have been freaked out and . . . would have known it . . . wasn't a good idea." He stressed that if he had seen a girl at the lot, he would not have had sex with her.

The crux of Buttrick's defense, then, was that he never had any intent to engage in illicit sexual conduct even before he left his home on his trip to the meeting place. Curiosity, in other words, not sex, led him across the state line.

**II.**

**A.      Unconstitutionality of the Statute as Applied**

We quickly dispose of Buttrick's as-applied constitutional challenge, since the claim of unconstitutionality is controlled by our prior decision in United States v. Gamache, 156 F.3d 1 (1st Cir. 1998). Gamache rejected the argument that 18 U.S.C. § 2423(b) punishes mere thought. See id. at 7-8. Other circuits have come to the same conclusion. United States v. Bredimus, 352 F.3d 200, 208-09 (5th Cir. 2003); United States v. Han, 230 F.3d 560, 563 (2d Cir. 2000); see also Hoke v. United States, 227 U.S. 308, 323 (1913) (upholding as constitutional similar statutory language in the Mann Act).

As Gamache holds, the statute punishes those who perform the act of crossing the state line with the intent to engage in the specified wrongful conduct. See 156 F.3d at 8. The intent requirement is often proved through another series of acts. See id. Here, as in Gamache, those acts include defendant's repeated correspondence with his intended paramour, his setting up the details of the assignation, his bringing of the condoms, and his actual traveling to the general vicinity of the rendezvous point,

on the scheduled date and at the scheduled time.  See id.  Buttrick "did not abstractly contemplate crossing state boundaries with a thought to committing a crime upon reaching his destination"; he did much more.  Id.

Buttrick attempts to distinguish Gamache on the ground that he allegedly displayed a clear intent not to engage in any illicit conduct.  This argument is nothing more than an attack on the sufficiency of the evidence and does not state a constitutional claim.

His argument that the statute violates due process by interfering with the right to travel suffers from the same infirmity.  He argues not that Congress cannot regulate travel as it does in the statute, but that since he lacked the requisite intent, the statute as applied is unconstitutional.  Again, this is nothing more than an attack on the jury's finding that he had the requisite intent.  Cf. Bredimus, 352 F.3d at 209-10 (holding that § 2423(b) does not impermissibly burden the right to foreign travel because it only criminalizes travel done with illicit intent).

**B.      Request for an Instruction on the Abandonment or Renunciation Defense**

We review a properly preserved objection to the failure to give a requested jury instruction de novo.  Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 133 (1st Cir. 2004) (citing Gray v. Genlyte Group, Inc., 289 F.3d 128, 133 (1st Cir. 2002)).  Such a refusal constitutes reversible error only if it was prejudicial in

-8-

light of the entire record.  Id. at 133.  If the proffered instruction misstates the applicable law, it cannot be accepted. See United States v. Montañez, 105 F.3d 36, 39 (1st Cir. 1997) ("[A] defendant is entitled to an instruction on his theory of defense if sufficient evidence is produced at trial to support the defense and the proposed instruction correctly describes the applicable law.").

At trial, the defense theory was that Buttrick had never formed an intent to engage in illicit sexual contact, that he was merely a victim of his own curiosity.  Nonetheless, at the close of trial, Buttrick requested an instruction[1] based on Model Penal Code

---

[1] The requested instruction provided:

Dustin Buttrick asserts as a defense that he renunciated or abandoned any effort to commit the crime with which he is charged.  It is a complete defense to the charge against the defendant that he renunciated or abandoned his effort to commit the crime or otherwise prevented its commission.  Such abandonment or renunciation must be complete and voluntary.
Renunciation is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose.
Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim.
The Government has the burden to prove beyond a reasonable doubt that the Defendant's renunciation or abandonment of the crime was not

-9-

§ 5.01(4), which defines renunciation as an affirmative defense to attempt crimes. For shorthand we refer to the defense as one of abandonment.

The rationale in the Model Penal Code for recognizing such a defense to attempt crimes is said to be twofold: "First, allowance of the defense recognizes that the actor's conduct no longer poses a danger to society. Second, the availability of the defense provides actors with a 'motive for desisting from their criminal designs, thereby diminishing the risk that the substantive crime will be committed.'" United States v. Shelton, 30 F.3d 702, 706 (6th Cir. 1994) (quoting Model Penal Code § 5.01(4) cmt. 8 (Official Draft 1985)).

The district court rejected defendant's request for an abandonment instruction on a number of grounds. One of those grounds -- that Buttrick's proposed instruction was not a correct statement of the applicable law -- suffices to affirm.

---

voluntary or not complete.
    If you find that the Defendant voluntarily and completely renunciated or abandoned an effort to commit the crime charged in the indictment then you must find him to be not guilty. If you find that his abandonment or renunciation was not voluntary or complete and that the Government has proven the elements of the offense as I have explained them to you then you should find the Defendant to be guilty.

Buttrick admits that the Model Penal Code defense by its terms applies to "attempt" crimes.[2] See, e.g., 18 U.S.C. § 751(a) (attempt to escape from custody); 21 U.S.C. §§ 841(b)(1)(A), 846 (attempt to possess cocaine for resale). He relies on cases that he claims recognize the defense of abandonment or renunciation of an attempt crime. See United States v. Doyon, 194 F.3d 207, 212 (1st Cir. 1999); United States v. Dworken, 855 F.2d 12, 20 (1st Cir. 1988); United States v. Bailey, 834 F.2d 218, 227 (1st Cir. 1987). These cases do not hold that the affirmative defense of abandonment is, in fact, available, but merely assume so arguendo. The government, in turn, relies on cases that explicitly reject the abandonment defense in attempt crimes. See, e.g., Shelton, 30 F.3d at 706. This circuit has reserved the question of the availability of the defense in attempt crimes, see Bailey, 834 F.2d at 227 & n.7, and, despite the battle waged in this case using the proxy of attempt crimes, we still reserve the question.

It is unnecessary to address the argument to resolve the case. We expressly do not reach the questions of (1) whether the Model Penal Code defense of abandonment is ever available for an attempt crime, and (2) whether, if the answer to the first question

---

[2] We note that Buttrick was charged with the substantive crime under 18 U.S.C. § 2423(b). We thus also do not reach any questions about available defenses to aiding and abetting, see United States v. Garrett, 720 F.2d 705, 713-14 (D.C. Cir. 1983) (considering an abandonment defense to the charge of aiding and abetting the violation of § 2423), or to conspiracy crimes of this ilk. Nor do we reach any questions about an entrapment defense.

were "yes," 18 U.S.C. § 2423(b) is sufficiently like an attempt crime that such an affirmative defense could in theory be applicable.

The district court, assuming arguendo that the law on the two points above could be read in defendant's favor, nonetheless rejected the proposed instruction on the ground that it misstated the law by misallocating the burden of proof. The proposed instruction placed the burden on the government "to prove beyond a reasonable doubt that [Buttrick's] renunciation or abandonment of the crime was not voluntary or complete."

The district court gave three reasons for its conclusion. First, the court noted that while the Model Penal Code appeared to place the burden of persuasion on the government on the defense of renunciation, see Model Penal Code § 5.01(4) cmt. 8, at 358-59, 361 (Official Draft 1985), that allocation of burdens had not generally been accepted by the states, see id. at 361 & n.282 (citing state statutes and proposals).

Second, the court pointed out that the statute of conviction, 18 U.S.C. § 2423, itself defined an affirmative defense to certain conduct criminalized by the statute. In that affirmative defense, set forth at § 2423(g), Congress placed the burdens of both production and persuasion on the defendant:

> Defense. In a prosecution under this section based on illicit sexual conduct as defined in subsection(f)(2), it is a defense, which the defendant must establish by a preponderance of

-12-

> the evidence, that the defendant reasonably believed that the person with whom the defendant engaged in the commercial sex act had attained the age of 18 years.

18 U.S.C. § 2423(g). It would be, the court reasoned, inconsistent to alter this allocation of burdens for an affirmative defense not even recognized by the statute.

Lastly, the court reasoned that the allocation of burdens in the proposed instruction was inconsistent with <u>United States</u> v. <u>Hartsock</u>, 347 F.3d 1 (1st Cir. 2003). Following <u>Hartsock</u>'s rule of examining both the particular crime and the particular defense to determine who has the burden of persuasion on an affirmative defense, <u>see</u> <u>id.</u> at 8-9, the district court held that "the burden of proof should be on the defendant with respect to this affirmative defense instruction."

The court noted that the defendant's premise was that even if all of the elements of the crime had been committed -- he had crossed the state line with the purpose to engage in sex with a minor -- he could nonetheless be found not guilty because he had abandoned that intent by the time he was stopped by the police.[3] Accepting arguendo the premise that an abandonment offense could lie, the district court held that the defendant is more likely than the prosecution to be in possession of the information necessary to

---

[3]     Again, we stress that we do not decide the validity of defendant's theory that the abandonment defense is applicable to a prosecution under 18 U.S.C. § 2423; we note only that to date no court has accepted the theory in this context.

-13-

establish the defense, and so the defendant should bear the burdens of both production and persuasion. Accordingly, the court concluded that under Hartsock, Buttrick's proposed instruction incorrectly placed the burden of persuasion for the affirmative defense on the government.[4]

The district court notified defense counsel of this problem in the proposed instruction and gave counsel a chance to propose a revised instruction that would place the burden of proof back onto the defendant. Counsel declined to do so.

We agree with the district court's analysis that the proposed instruction was simply wrong as to the allocation of burdens of this assumed defense under 18 U.S.C. § 2423, even indulging every preliminary assumption in defendant's favor. There is no need to add to the district court's thoughtful analysis of the problem.

### III.

We **affirm** the judgment of conviction.

---

[4] Even in Bailey, in which this court reserved the question of the availability of the abandonment defense for attempt crimes, the proffered abandonment instruction, held not to be warranted by the evidence, placed the burden of persuasion on the defendant. 834 F.2d at 226 n.6.