# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3536

_____

United States of America,

           Appellee,

    v.

James William Young,

           Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Southern
\*  District of Iowa.
\*
\*
\*

_____

Submitted: April 14, 2010
Filed: July 19, 2010

_____

Before WOLLMAN, MURPHY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Following trial, a jury convicted James William Young of one count of attempting to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). The district court[1] sentenced Young to 160 months imprisonment, a $100 special assessment, and 10 years supervised release. Young appeals, challenging his conviction, the refusal of his proffered jury instructions on abandonment and entrapment, and his sentencing enhancements for misrepresentation of identity and obstruction of justice. See United States Sentencing Commission, Guidelines Manual, §§2G1.3(b)(2)(A), 3C1.1. For the following reasons, we affirm.

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

I.

On November 4, 2008, at 3:50 p.m., Young, a 33-year-old married father of three, entered an adult online chat room entitled "romance, adult," on Yahoo! Instant Messenger. Young utilized the screen name "Funminqc" and sent an instant message to an individual with the screen name "Erj94e." The person at "Erj94e" responded and disclosed that her name was "Emily" and that she was a 14-year-old female. Unbeknownst to Young, in reality "Emily" was undercover Dewitt, Iowa Police Officer Shai Cruciani of the Internet Crimes Against Children Task Force.[2]

Emily and Young chatted for approximately one hour. After Emily disclosed that she disliked band, Young told Emily that he worked as an engineer for Alliant Energy, although, in reality, he was a band director at a high school in Clinton, Iowa. Young asked Emily if she had a boyfriend and she responded that she did not. Young also told Emily that he was not married, discussed the possibility of a future meeting and provided Emily with his cell phone number. Young sent Emily a picture of himself, and Emily sent Young a photograph that had been digitally modified to appear to be of a 14-year-old female.

Young and Emily chatted online and exchanged emails on several occasions between November 4 and November 13, 2008. During their discussions, Young continued "grooming"[3] Emily by never indicating that he was a band director and

---

[2]"The Internet Crimes Against Children Task Force involves investigating those offenses that include production of child pornography, possession of, trading of, and investigating individuals that utilize the Internet to have sexual contact with minor persons." (Detention Hr'g Tr. 2-3.)

[3]"Grooming" is a term utilized by the Internet Crimes Against Children Task Force which refers to "a way that subjects, adult subjects [converse] with persons on the Internet that are under the age of 18. For example, . . . the subject might talk about

discussing topics he knew would be of interest to her. As the chats progressed, they became more sexually explicit in nature, including references to sexual acts the two might perform with each other. Specifically, Young inquired if Emily had "ever done oral . . . ever had a guy lick you?"[4] (Trial Tr. vol. II, 147.) When she responded "no," Young stated, "K, well may have to give you that experience." (Id.)

Emily eventually agreed to meet Young in person. Emily told Young that she had seen a Super 8 Motel close to Westbrook Park in DeWitt, Iowa. Young offered to obtain a room at the Super 8. Young warned Emily to keep their relationship and planned meeting private. Young specifically told Emily not to tell anyone because "[he] would be locked up" for "being with a minor." (Id. at 149.)

During one of the final online conversations between Emily and Young, the discussion progressed to include graphic details of an anticipated sexual encounter, with Young indicating that he wanted to "kiss, touch, and lick" Emily and suggesting that the two have sexual intercourse at the motel. (Id. at 155.) Young and Emily exchanged emails to arrange the details of their meeting, which was to take place on November 13, 2008. Emily suggested that Young pick her up at Westbrook Park, but the two eventually decided that she would walk to the Super 8 Motel. Emily indicated that she would be dressed in jeans and a pink coat. Young planned to arrive at approximately 3:00 p.m., check into a room, and leave a note containing Emily's name and his room number on the windshield of his car.

---

things that the . . . person under age 18 would be interested in such as what they like to do with their friends, where they like to eat, what they like to do for fun . . . . The purpose of the grooming is to build a trusting relationship between the two parties." (Trial Tr. vol. II, 132.)

[4]We have avoided making any edits that would alter the meaning of the electronic communication; thus, the quoted language includes grammatical and typographical errors.

-3-

On November 13, 2008, Young used his personal credit card to reserve a room at the Super 8 Motel in Dewitt, Iowa. Young then drove to the Super 8 followed by several undercover police officers. Upon his arrival at the motel at approximately 3:10 p.m., he attempted to reserve a room at the front desk, however his credit card was declined. Young told the motel clerk that he was going to withdraw cash and then return. Young next drove to a U.S. Bank Automated Teller Machine ("ATM"), where Young appeared to attempt a cash withdrawal. Young's account, however, had insufficient funds and Young called the Super 8 clerk and cancelled his reservation due to his inability to secure any payment.

Young next drove to a middle school and high school near the Super 8. Young traveled back and forth between the schools and motel several times and circled the parking lots. Young eventually drove to Westbrook Park. Officer Tamii Gordy, another undercover officer with the Dewitt Police Department, was standing in the park dressed in jeans and a pink coat. When Young saw the undercover officer, he began honking and yelling. Officers then arrested Young.

The officers gave Young his Miranda[5] warnings and Young agreed to an interview. This interview occurred prior to Young's discovery that "Emily" was not, in fact, a 14-year-old female. During the interview, Young indicated that he had "feelings that [he was] not proud of for the last 15 years" and that he had been online chatting with a 14-year-old girl named Emily. (Id. at 169.) Young indicated that the chat topics included, "sex once, playing cards, eating pizza, that they were supposed to meet in the hotel room for four hours, possibly take a bath because she liked to take baths, [and] they had talked about touching and kissing and oral." (Id. at 137-38.) When asked whether a sexual encounter would have occurred between himself and Emily in the hotel room, Young responded that "he didn't know if it would [have been] 100 percent innocent while in the room." (Id. at 138.) During the search

_____

[5]Miranda v. Arizona, 384 U.S. 436 (1966).

incident to Young's arrest, officers discovered a condom on Young's person. After obtaining a search warrant for Young's car, officers recovered a note with the name "Emily" written on it and a bottle of bubble bath.

On December 12, 2008, a grand jury returned an indictment charging Young with attempted enticement of a minor to engage in sexual activities, in violation of 18 U.S.C. § 2422(b). At trial, several officers involved in the investigation testified about surveillance videos at the Super 8 and electronic evidence they had obtained from Young's online chats with Emily. The government also introduced evidence of sexually explicit online chats between Young and other females under the age of 18, in some of which Young attempted to arrange meetings with other minors.

Young pled not guilty and stated that he had been "tempted" by Emily, that his online conversations were merely fantasies, and that he had not intended to go through with the planned sexual encounter, but had traveled to the Super 8 out of concern for Emily's safety. Young testified that he had used a "maxed out credit card" because he had never expected to obtain a room. (Trial Tr. vol. III, 317-18.) He also stated that he had driven to the ATM to watch for Emily and not to withdraw money. Finally, he testified that, after cancelling the reserved room, he had driven around in search of Emily only to ensure that she was safe.

Young requested that the jury be instructed on his abandonment and entrapment defenses. Young's proffered abandonment instruction read:

> One of the issues in this case is whether the defendant abandoned his attempt. If the defendant abandoned his attempt he must be found not guilty. The government has the burden of proving beyond a reasonable doubt that the defendant did not abandon his attempt. When the actor's conduct would otherwise constitute an attempt it is an affirmative defense that he abandoned his effort to commit the crime or otherwise prevented its commission under the circumstances manifesting a complete and voluntary renunciation of his criminal purpose.

Renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another by similar objective or victim.

(Appellant's Br. Add. 8-9 (citing 8th Cir. Model Jury Instructions § 9.05 (2007);[6] Model Penal Code § 5.01 (2001); United States v. Dworken, 855 F.2d 12, 20 (1st Cir. 1988)).) Young's proffered entrapment instruction stated:

One of the issues in this case is whether the defendant was entrapped. If the defendant was entrapped, he must be found not guilty. The government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped. If the defendant before contact with [the officers] did have an intent or disposition to commit the crime charged . . . then he was not entrapped, even though [the officer] provided a favorable opportunity to commit the crime or made committing the crime easier or even participated in acts essential to the crime.

(Id. at 7 (quoting 8th Cir. Model Jury Instructions § 9.01 (2007)).) The district court refused both instructions, finding that they were not supported by the evidence.

On April 15, 2009, a jury found Young guilty of enticement of a minor to engage in illicit sexual activity. Young moved for a new trial, claiming that the district court improperly refused his proposed abandonment and entrapment

---

[6]Section 9.05 does not contain a specific model instruction, however, the notes to section 9.05 state: "[N]o general instruction is provided because each such instruction must be drafted in accord with the particular issues of the case." 8th Cir. Model Jury Instructions § 9.05, Notes on Use (2007).

instructions. The district court denied the motion, stating that "the requested [abandonment] instruction would have permitted the jury to acquit the defendant after finding that he completed the crime" as Young "had already taken several substantial steps, thereby completing the crime of attempt." (District Ct. Order 6-7.) As to the entrapment instruction, the court explained, "The defendant's theory of entrapment was not supported by the evidence presented at trial." (Id. at 8.)

At Young's sentencing hearing, the district court increased Young's offense level by two for misrepresentation of identity, pursuant to USSG §2G1.3(b)(2)(A). The court explained,

> Here, it is not speculative to suggest that a child would be more alerted, more hesitant to discuss and agree to sexual behavior with an adult if the child knew that the person was a teacher . . . someone married with children . . . someone who's directly involved by their occupation or avocation in serving and particularly protecting children.

(Sentencing Hr'g Tr. 21.) The court also applied a two-level enhancement for obstruction of justice, pursuant to USSG §3C1.1, stating, "I find by a preponderance of the evidence that [Young's] testimony [proclaiming his innocence] was intentionally false." (Id. at 21-22.) Based on these enhancements, Young's advisory Guidelines range was 151 to 188 months imprisonment. The district court sentenced Young to 160 months imprisonment followed by 10 years of supervised release.

II.

On appeal, Young challenges: (1) the sufficiency of the evidence in support of his conviction; (2) the district court's refusal of his proffered abandonment and entrapment jury instructions; and (3) his sentence enhancements for misrepresentation of identity and obstruction of justice.

A.

Young first challenges the sufficiency of the evidence, claiming that he was merely in the "preparation" stages of the crime and several steps remained before he would have completed an attempt. We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the jury's verdict. United States v. Molsbarger, 551 F.3d 809, 812 (8th Cir. 2009). The jury's verdict will be upheld if there is any interpretation of the evidence that could lead a reasonable jury to find the defendant guilty beyond a reasonable doubt. Id.

In order to convict a defendant for enticement of a minor to engage in sexual activities,[7] the government must prove beyond a reasonable doubt that the defendant: (1) "used a facility of interstate commerce, such as the internet or the telephone system;" (2) "knowingly used the facility of interstate commerce with the intent to persuade or entice a person to engage in illegal sexual activity;" and (3) "believed that the person he sought to persuade or entice was under the age of eighteen." See United States v. Pierson, 544 F.3d 933, 939 (8th Cir. 2008), cert. denied, 129 S. Ct. 2431 (2009). "The elements of attempt are (1) intent to commit the predicate offense, and (2) conduct that is a substantial step toward its commission." United States v.

_____

[7]Specifically, 18 U.S.C. § 2422(b) reads:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b).

Spurlock, 495 F.3d 1011, 1014 (8th Cir. 2007) (citing United States v. Blue Bird, 372 F.3d 989, 993 (8th Cir. 2004)). An attempt exists when a defendant's actions go "beyond mere preparation; [are] necessary to the consummation of the crime; and . . . strongly corroborate [the defendant's] criminal intent to [commit the predicate offense]." Id.

In attempted enticement of a minor cases, the defendant's intent can be inferred when the defendant has online conversations of a sexual nature with a minor. See United States v. Patten, 397 F.3d 1100, 1102-03 (8th Cir. 2005) ("[W]e have no difficulty concluding that the transcripts of the Internet chats and the telephone conversation are sufficient evidence to permit a reasonable jury to find that Patten intended to persuade "Sarah" to engage in sexual activity."). The evidence in the record overwhelmingly supports Young's intent. Young's various internet chats with Emily are consistent with his intent to entice her to meet him and engage in sexual activities, as he engaged in several discussions with Emily which involved sex, although he knew that Emily was only 14-years-old. See Patten, 397 F.3d at 1102-03. The condom, note with the name "Emily," and bottle of bubble bath discovered by officers further support Young's intent to engage in the crime as they were specifically mentioned during the online conversations. Additionally, even after he had been arrested, Young confessed to officers that he had planned a meeting with Emily on the internet and indicated that he was not sure that "it would [have been] 100 percent innocent while in the room." (Trial Tr. vol. II, at 138.)

Whether Young took a substantial step towards completion of the crime merits a more detailed analysis. A substantial step generally exists when a defendant takes actions "necessary to the consummation of the crime" that were of "such a nature that a reasonable observer, viewing [the actions] in context could conclude . . . that [the actions were] undertaken in accordance with a design to" commit the actual offense. United States v. Mims, 812 F.2d 1068, 1077 (8th Cir. 1987) (quotation omitted). Indeed, we have previously held that a defendant took substantial steps where he

arranged to meet the minor at a certain time or place and traveled to the designated meeting location.  See United States v. Myers, 575 F.3d 801, 809 (8th Cir. 2009) (finding that the defendant took a substantial step towards commission of the crime when he drove "two hours to meet [the minor for a sexual liaison] while she was purportedly home alone"); Patten, 397 F.3d at 1104 ("There is clear authority for the government's position that Patten's act of driving to the arranged meeting place in West Fargo was relevant evidence of a substantial step."); United States v. Dickson, 149 F. App'x 543, 544 (8th Cir. 2005) (unpublished per curiam) (finding a substantial step when the defendant "initiated the conversation with [a minor], tried to persuade her to engage in sexual activity, arranged to meet her for that purpose, and was waiting for her at the arranged time and place when he was arrested").

Here, Young used his personal credit card to reserve the motel, traveled to the motel, attempted to charge the room to his credit card upon arrival at the motel, and drove to an ATM after his credit card was declined, all prior to cancelling the motel room.  Moreover, Young did not leave after cancelling the room; instead, he drove around the area and eventually traveled to the park Emily had mentioned in a prior online chat.  All of these acts establish that Young took not just one, but several substantial steps towards committing the crime of enticement of a minor under our case law.  See Myers, 575 F.3d at 809; Patten, 397 F.3d at 1104.  We therefore conclude that the evidence supports Young's jury conviction for attempted enticement of a minor as a reasonable jury could find Young guilty beyond a reasonable doubt.  See Molsbarger, 551 F.3d at 812.

## B.

Young next challenges the district court's refusal of his proffered jury instructions on the defenses of entrapment and abandonment.  We review the district court's denial of a proffered legal defense de novo.  See United States v. Buttrick, 432 F.3d 373, 376 (1st Cir. 2005) ("We review a properly preserved objection to the

failure to give a requested jury instruction de novo."); United States v. Benning, 248 F.3d 772, 775 (8th Cir. 2001) ("We review the district court's denial of the defense of entrapment by estoppel de novo, because it is a question of law."); see also United States v. Santiago-Godinez, 12 F.3d 722, 726 (7th Cir. 1993) ("The legal sufficiency of a proffered defense is a question of law and therefore is reviewed de novo."). "To the extent that the district court's legal conclusion regarding whether [Young's] defense theory accurately reflected the law was based on factual findings, we review for clear error." Benning, 248 F.3d at 775. We note that in United States v. Kendrick, 423 F.3d 803 (8th Cir. 2005), we reviewed the refusal of an entrapment instruction for abuse of discretion. See id. at 807. However, in support of this standard of review, Kendrick cites United States v. Williams, 109 F.3d 502 (8th Cir. 1997), which noted, "[w]e review a district court's *formulation* of jury instructions for an abuse of discretion." Id. at 508 (emphasis added). In Williams, the defendant did not argue that his proffered legal defense had been denied, yet challenged the district court's submission of a modified instruction because it "was confusing and tended to emphasize the government's version of the facts." Id. Therefore, although district courts exercise wide discretion in *formulating* jury instructions, see id., when the refusal of a proffered instruction simultaneously denies a legal defense, the correct standard of review is de novo, see Benning, 248 F.3d at 775. Here, Young argues that the district court erred in failing to permit him to submit his abandonment and entrapment instructions to the jury. Therefore, the refusal of his jury instructions was, in essence, the denial of Young's defenses and a de novo review is proper.

### 1. Abandonment Instruction

In his proposed abandonment instruction, Young cited the Model Penal Code, in which the provisions concerning criminal attempt include references to the affirmative defense of voluntary renunciation. See Model Penal Code § 5.01(4). The code section provides that the defense applies only when the defendant:

abandon[s] his effort to commit the crime or otherwise prevent[s] its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose . . . . [R]enunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim.

Id. The Model Penal Code lists two considerations for recognizing such a defense in attempt crimes: (1) "renunciation of criminal purpose tends to negative dangerousness," and (2) "to provide actors with a motive for desisting from their criminal designs, thereby diminishing the risk that the substantive crime will be committed." Model Penal Code § 5.01(4) cmt. 8 (Official Draft and Revised Comments 1985).

This issue of whether a defendant is entitled to an abandonment defense once an attempt has been completed, i.e., the defendant has the requisite intent and has completed a substantial step towards the crime, is an issue of first impression in our circuit. While we have stated, "[i]n an attempt case, abandonment precludes liability," United States v. Robinson, 217 F.3d 560, 564 n.3 (8th Cir. 2000), we relied upon United States v. Joyce, 693 F.2d 838 (8th Cir. 1982) in making that comment. Joyce, however, involved abandonment of an attempt prior to the completion of the attempt. Id. at 841. We hold today that a defendant cannot abandon an attempt once it has been completed.[8]

_____

[8]Young cites United States v. Dworken, 855 F.2d 12 (1st Cir. 1988), in support of his theory; however, Dworken is not binding on our court and, to a certain extent, supports the case against Young. Through dicta, Dworken avoids the issue at hand by "assuming arguendo that [the abandonment defense] might in some circumstances"

We emphasize that all of our sister circuits that have faced this issue have either held that a defendant cannot abandon a completed attempt or have alluded to such a determination. See United States v. Crowley, 318 F.3d 401, 410-11 (2d Cir. 2003) (not formally addressing the issue but noting, "[t]he only other circuits that have formally addressed the question have rejected the defense as a matter of federal law"); United States v. Shelton, 30 F.3d 702, 706 (6th Cir. 1994) ("[W]ithdrawal, abandonment and renunciation, however characterized, do not provide a defense to an attempt crime."); United States v. Bussey, 507 F.2d 1096, 1098 (9th Cir. 1974) ("A voluntary abandonment of an attempt which has proceeded well beyond preparation as here, will not bar a conviction for the attempt."); United States v. Wales, 127 Fed. App'x 424, 432 (10th Cir. 2004) (unpublished) ("[N]either this circuit nor any other circuit to have addressed the issue has held that abandonment or renunciation may constitute a defense to the completed crime of attempt.").

Specifically, in Shelton, the Sixth Circuit rejected the Model Penal Code's approach and held that "withdrawal, abandonment and renunciation, however characterized, do not provide a defense to an attempt crime." 30 F.3d at 706. The court explained:

> As noted, the attempt crime is complete with proof of intent together with acts constituting a substantial step toward commission of the substantive offense. When a defendant withdraws prior to forming the necessary intent or taking a substantial step toward the commission of

---

apply to the crime of attempt. 855 F.2d at 20. Instead of discussing the particular circumstances in which an attempt crime might be abandoned, Dworken focused on whether the abandonment itself was legally sufficient, a different topic than our issue at hand. See id. at 20-22. Dworken further noted that, "[t]he theory of abandonment is that certain behavior indicates a renunciation of criminal intent, such that the dangerousness manifested by the criminal attempt is no longer viable." Id. at 20. Here, "the dangerousness manifested" by Young's attempt was still viable because he had completed the crime and had therefore not renounced his criminal intent. See id.

-13-

the offense, the essential elements of the crime cannot be proved. At this point, the question whether a defendant has withdrawn is synonymous with whether he has committed the offense. After a defendant has evidenced the necessary intent and has committed an act constituting a substantial step toward the commission of the offense, he has committed the crime of attempt, and can withdraw only from the commission of the substantive offense. We are not persuaded that the availability of a withdrawal defense would provide an incentive or motive to desist from the commission of an offense, especially since the success of the defense presupposes a criminal trial at which the issue would be submitted to the jury for decision. A remote chance of acquittal would appear to have an even more remote chance of deterring conduct. We recognize, of course, that attempt crimes pose unique issues. However, the interest of defendants in not being convicted for mere thoughts, desires or motives is adequately addressed by the government's burden of proving that the defendant took a substantial step toward the commission of the substantive offense.

Id. (quotation omitted).


We have previously held that completed crimes, other than attempt, cannot be abandoned. See United States v. Ball, 22 F.3d 197 (8th Cir. 1994). Specifically, in Ball, defendants who had been convicted of entering a bank with intent to commit robbery, in violation of 18 U.S.C. § 2113(a), argued that the district court erred by refusing "an instruction on a defense theory: that, even had the defendants entered the bank with intent to commit a robbery, they subsequently abandoned or withdrew from their intention when they left the bank without pointing a gun or announcing a stick-up." Id. at 199. We held that the abandonment defense did not apply because the crime had been completed once the defendants entered the bank. Id.

Because our circuit has already determined that the abandonment defense: (1) can apply to uncompleted attempt crimes, see Joyce, 693 F.2d at 841-42, and (2) has been rejected as a defense to completed crimes other than attempt, see Ball, 22 F.3d at 199, logically flowing from this analysis is the conclusion that, when a defendant

-14-

has completed the crime of attempt; i.e., has the requisite intent and has taken a substantial step towards completion of the crime, he cannot successfully abandon the attempt because the crime itself has already been completed.  We therefore adopt the Sixth Circuit's approach in Shelton, specifically reject the Model Penal Code approach, and hold that the defense of abandonment is not warranted once a defendant completes the crime of attempt.  We acknowledge, that "[a]fter a defendant has evidenced the necessary intent and has committed an act constituting a substantial step toward the commission of the offense, he has committed the crime of attempt, and can withdraw only from the commission of the substantive offense," not the attempt of such offense.  Shelton, 30 F.3d at 706.

As discussed above, Young completed his attempt because he had the requisite intent and took a substantial step towards completion of the enticement crime, all supported by the evidence discovered in his car, his travel to the hotel and attempt to check in, and his search for Emily once he could not obtain the hotel room.  Because Young completed "the essential elements" of his attempt, Shelton, 30 F.3d at 706, he cannot now claim that he abandoned that plan.  We therefore conclude that the district court committed no error in its decision to refuse Young's proffered abandonment instruction.

2. Entrapment Instruction

Young also argues that the district court erred in refusing his proffered entrapment instruction.  Because it is an affirmative defense, entrapment is a question of fact and generally decided by a jury.  Kendrick, 423 F.3d at 807.  However, a defendant is entitled to an entrapment instruction only where "there is sufficient evidence from which a reasonable jury could find entrapment."  Mathews v. United States, 485 U.S. 58, 62 (1988).  "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct."  Id. at 63.

Therefore, to warrant an entrapment instruction, a defendant must first present evidence that the government induced the criminal conduct. See Jacobson v. United States, 503 U.S. 540, 553 (1992). Inducement exists when the government "implanted the criminal design" in the defendant's mind. United States v. Eldeeb, 20 F.3d 841, 843 (8th Cir. 1994). Some of the inducement factors relevant to enticement of a minor to engage in a sexual activity include: "whether the government made the initial contact; . . . whether the government introduced the topics of sex and meeting in person; and the extent to which the government influenced [the defendant's] behavior by portraying [minors] as sexually precocious teenagers." Myers, 575 F.3d at 806-07 (holding inducement did not occur when "the government did not threaten, coerce, or psychologically manipulate" the defendant).

Here, although the undercover officer posing as Emily alluded to sex in some of the online chats, Young initially contacted Emily, and it was Young who initiated the majority of sexual discussions, supporting the conclusion that he was not induced by the government. In particular, Young was the one who brought up the topic of a sexual encounter at the Super 8 Motel and who reserved a room. Additionally, although Emily pretended to be receptive to Young's sexual suggestions, and was arguably portrayed as a "sexually precocious teenager[]," Myers, 575 F.3d at 806, the government did not "implant[] the criminal design" in Young's mind, Eldeeb, 20 F.3d at 843, nor did it "threaten, coerce, or psychologically manipulate" him, Myers, 575 F.3d at 806. Therefore, the district court did not err in refusing to instruct the jury on an entrapment defense. See Kendrick, 423 F.3d at 807 ("If the defendant exhibits any predisposition to engage in the criminal conduct, the district court need not instruct the jury on entrapment." (quotation omitted)); see also United States v. Neal, 990 F.2d 355, 358 (8th Cir. 1993) ("A district court may refuse to submit an entrapment instruction when the defendant exhibited a disposition to engage in the criminal activity with which he was charged because if predisposition exists, then there is not sufficient evidence from which a reasonable jury could find entrapment." (quotation omitted)).

-16-

Moreover, even had Young established that the government induced his criminal conduct, Young was predisposed to commit the crime. Once government inducement is established by the defendant, the burden shifts to the government to demonstrate beyond a reasonable doubt that the defendant was predisposed to commit the crime. Kendrick, 423 F.3d at 807. The predisposition element "focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who 'readily availed himself of the opportunity to perpetrate the crime.'" Myers, 575 F.3d at 805 (quoting Mathews, 485 U.S. at 63). Specifically, in Myers we found that a defendant was predisposed to commit the crime of enticement of a minor to engage in sexual activity where:

> [The defendant] met [an undercover agent posing as a minor] in a romance chat room and quickly learned that she was fourteen years old. Nevertheless, he showed no reluctance to engage in sexually explicit conversation and asked about her undergarments. [The defendant] initiated the second chat—in which [an undercover agent posing as a minor] first appeared under the pseudonym "Kim"—raised the subject of a physical meeting, and steered the discussion toward sex. Kim subsequently introduced the subject of her age on a number of occasions, but [the defendant] did not appear to give the issue any serious consideration.

Id. at 808.

The evidence of Young's numerous other internet chats, during which he attempted to arrange meetings with minors for sexual encounters, clearly show his predisposition to commit this crime. See id. Moreover, Young quickly responded to Emily's apparent willingness to engage in sexual activities and it did not take a great deal of further effort from the undercover officers for Young to arrange the meeting. See Jacobson, 503 U.S. at 550 ("Had the agents in this case simply offered petitioner the opportunity to [commit the crime], and petitioner . . . had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense would have

-17-

warranted a jury instruction."); Myers, 575 F.3d at 805 (holding that "a ready response to minimal inducement indicates criminal predisposition."). Because Young has not presented "sufficient evidence from which a reasonable jury could find entrapment," the district court did not abuse its discretion in refusing Young's entrapment instruction. Mathews, 485 U.S. at 62.

## C.

Young's final arguments challenge the district court's sentence enhancements for misrepresentation of identity and obstruction of justice. "We review interpretation of the Sentencing Guidelines de novo and a district court's application of the Guidelines to the facts for clear error." United States v. Rutherford, 599 F.3d 817, 820 (8th Cir. 2010).

## 1. Misrepresentation of Identity

The Guidelines instruct the district court to apply a two-level enhancement to a defendant's offense level "[i]f the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexually conduct." USSG §2G1.3(b)(2)(A). The comments to section 2G1.3(b)(2)(A) clearly state that "[t]he misrepresentation to which the enhancement . . . may apply includes misrepresentation of a participant's name, age, *occupation*, gender, or *status* as long as the misrepresentation was made with the" requisite intent. Id. §2G1.3, comment. (n.3(A)) (emphasis added).

Although we have not yet interpreted this exact sentencing provision, in discussing a similar enhancement for misrepresenting identity in the context of a

conviction for possession of child pornography, USSG §2G2.1(b)(6)(A),[9] we have held that the enhancement is warranted when the misrepresentation is "instrumental in getting the victims to engage in sexually explicit conduct." United States v. Starr, 533 F.3d 985, 1002 (8th Cir. 2008) (finding an enhancement based on misrepresentation of age was proper under USSG §2G2.1(b)(6)(A)).

The Ninth Circuit is the only circuit that has interpreted section 2G1.3(b)(2)(A) in detail. See United States v. Holt, 510 F.3d 1007 (9th Cir. 2007). Holt held that a defendant who misrepresented his age over a six-month period of time was subject to the enhancement, because "[t]he district court reasonably could have concluded that [the defendant] was misrepresenting his identity in a prolonged effort to groom what he though was a thirteen-year-old girl for illicit sexual contact." Id. at 1010-11. Young argues that his misrepresentation was not meant to induce Emily because it occurred over a shorter period than in Holt. However, the Guidelines do not make a temporal distinction. Young told Emily that he worked as an engineer after Emily stated that she disliked band. Young also told Emily that he was not married, although in reality, he had a wife and three children. Therefore, the two-level enhancement for misrepresentation of identity was appropriate.

---

[9]The Guidelines specifically state:

> If, for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved . . . the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage sexually explicit conduct . . . increase [the Base Offense Level by] 2 levels.

USSG §2G2.1(b)(6)(A).

## 2. Obstruction of Justice

A defendant's sentence may be increased by two levels,

> [i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct; or a closely related offense.

USSG §3C1.1.

> We have repeatedly affirmed obstruction-of-justice enhancements, despite the absence of specific findings on the elements of perjury, when the evidence of the defendant's willfulness was unequivocal and the record left no doubt that the defendant's false testimony at trial was not the result of confusion, mistake, or faulty memory.

United States v. Vickers, 528 F.3d 1116, 1122 (8th Cir. 2008) (quotation omitted).

Here, Young testified that he did not travel to the motel to commit the crime, but that he merely traveled to the location to ensure that Emily arrived home safely. He specifically stated that his online chats were merely a "fantasy" to see how much Emily would discuss online. However, the evidence overwhelmingly indicates otherwise. Young drove to the hotel, attempted to book a room, and drove around the surrounding area when he did not see her. Additionally, a condom and bubble bath were found in his car, indicating that he desired to engage in sexual conduct with Emily. Moreover, his testimony directly contradicts his confession to police subsequent to his arrest, where Young admitted that he had online chats with Emily, that they had discussed topics of a sexual nature, and that they had planned a meeting which may not have been "100 percent innocent." (Trial Tr. vol. II, at 138.) As the district court noted, Young's false testimony was not a result of confusion or faulty

memory, thus the false testimony constituted an obstruction of justice.  Therefore, Young's two-level sentence enhancement, pursuant to USSG §3C1.1, was appropriate.


## III.


For the foregoing reasons, we affirm Young's conviction and sentence.

_____