# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2769

_____

United States of America

*Plaintiff - Appellee*

v.

Brandon Lee Hayes

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Western

_____

Submitted: April 13, 2022
Filed: August 17, 2022

_____

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

_____

SMITH, Chief Judge.

Brandon Hayes was convicted by a jury of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(9), and possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). The district

court[1] sentenced him to 125 months' imprisonment. Hayes appeals the district court's refusal to give an entrapment instruction. He also raises a *Brady*[2] claim as well as a claim of ineffective assistance of counsel.[3] We affirm.

## I. *Background*

On February 21, 2014, George Nelson went to the Sioux City Police Department and spoke to Detective Josiah Fenceroy.[4] Nelson provided information about drug sales in the area and agreed to assist Detective Fenceroy as a confidential informant. On June 22, 2014, Nelson told Detective Fenceroy that Brandon Hayes had repeatedly reached out to him about finding a buyer for a firearm that Hayes wished to sell. Detective Fenceroy asked Special Agent Zane Dodds of the ATF to help him investigate Nelson's information. Agents determined that prior to June 23, 2014, Hayes had multiple prior convictions, including "several domestic abuse assault convictions, making it unlawful for him to possess or sell a firearm." R. Doc. 411, at 4.[5]

The agents planned a sting operation. Agent Dodds would operate undercover, posing as a potential gun buyer, and attempt to purchase a firearm from Hayes. The

---

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

[2]*Brady v. Maryland*, 373 U.S. 83 (1963).

[3]The government also appealed the issue of whether Hayes's Nebraska convictions for terroristic threats constituted predicate offenses under the Armed Career Criminal Act, but it has since voluntarily dismissed its appeal.

[4]Detective Fenceroy had become a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) by the time trial began.

[5]Hayes's prior convictions were stipulated at trial.

officers gave Nelson instructions to get in touch with Hayes and tell him that Nelson had found him a buyer.

Initially, Nelson tried to make contact, but Hayes did not answer his phone. Nelson eventually got a message to Hayes about the prospective buyer—precisely how is never made clear in the record.[6] Hayes responded within a day or two of being presented with an opportunity to sell a firearm.

On June 23, 2014, Hayes contacted Nelson and arranged with Nelson to meet the buyer at a local McDonald's restaurant parking lot for the transaction. Agent Dodds, posing as the buyer, and Nelson met with Hayes at the specified location. At the meeting, Hayes showed Agent Dodds four photographs of the shotgun that he was offering for sale. Hayes agreed to sell the shotgun to Agent Dodds for $50. Hayes told Agent Dodds to drive to an alley behind a nearby church to complete the transaction. Agent Dodds did as instructed. Hayes met Agent Dodds behind the church and handed him a Mossberg Model 500AB 12-gauge shotgun, wrapped in a blanket.[7] Agent Dodds gave Hayes $50. Detective Fenceroy provided surveillance of the transaction. The meeting, conversation, and transaction were all recorded, both audio and video, and transcribed.

In the recorded conversation between Hayes and Agent Dodds, Hayes made several statements about acquiring firearms for the purpose of reselling them. Hayes mentioned that he was "getting SKSs, AK-47s, . . . everything down to little 380s, 38

---

[6]The government disclosed in discovery that Nelson had said that he would get a relative to contact Hayes. The disclosure did not identify the relative as Nelson's brother. No evidence emerged at trial conclusively showing that Nelson's brother made contact with Hayes.

[7]The shotgun's serial number was originally found obliterated, but it was later raised and determined to be D78875.

Snub Specials." R. Doc. 299-1, at 62. He noted that "these [guns] aren't things that you use to try to register" but "are to be disappeared with." *Id*. He specifically highlighted that the serial "[n]umbers [had] been removed already" on the shotgun, thereby preventing it being registered, telling Agent Dodds "you can't register these" and "[t]hese are not for registering." *Id.* at 60. When Agent Dodds checked the weapon, Hayes alerted him that the firing pin had been altered, with Hayes advising Agent Dodds, "Change the firing pin, that way they don't register the same." *Id.* at 65. After discussing potential future gun purchases (as well as the possible purchase of six to eight ounces of methamphetamine), Agent Dodds and Nelson left with the shotgun.

Hayes was arrested following his indictment in November 2014.

In a post-arrest, pre-trial recorded jail telephone call between Hayes and his wife, Hayes said, "Was it not better selling the gun for the money that we needed than to turn around and use the gun to obtain the money we needed?" *Id.* at 109.

Hayes argued in pretrial pleadings, and at opening argument, that law enforcement entrapped him. According to Hayes, a few days before the gun transaction, Nelson had placed the firearm under Hayes's porch and then called Hayes to let him know it was there; after Nelson failed to retrieve the gun, he told Hayes to bring it to the transaction that Nelson set up with Agent Dodds to sell it. Hayes requested a jury instruction on entrapment, but the district court denied his request for lack of evidence of inducement.

At trial, Hayes's attorney cross-examined various government witnesses about the alleged communications between Nelson and his brother and between Nelson and Hayes in advance of the transaction. Hayes's counsel attempted to impeach Nelson by showing inconsistency between Nelson's testimony and Agent Dodd's recollection as to how Hayes had been contacted for the sale. The jury convicted Hayes of being

a prohibited person in possession of a firearm and of possessing a firearm with an obliterated serial number.

## II. *Discussion*

On appeal, Hayes makes several arguments: first, Hayes argues that the district court erred in denying his request for an entrapment instruction; second, he raises a *Brady* claim; and third, he argues ineffective assistance of counsel. We consider his arguments in turn.

## A. *Entrapment*

Hayes contends that his illegal gun sale only occurred because the government entrapped him with its arranged purchase. Consequently, his first argument alleges that the district court erred in declining to instruct the jury on entrapment as he requested.

Although district courts exercise wide discretion in formulating jury instructions, when the refusal of a proffered instruction simultaneously denies a legal defense, the correct standard of review is de novo. *United States v. Young*, 613 F.3d 735, 744 (8th Cir. 2010). Accordingly, we review de novo a district court's denial of a proffered instruction on entrapment. *United States v. Strubberg*, 929 F.3d 969, 976 (8th Cir. 2019).

> Because it is an affirmative defense, entrapment is a question of fact and generally decided by a jury. However, a defendant is entitled to an entrapment instruction only where there is sufficient evidence from which a reasonable jury could find entrapment. A valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct.

*United States v. Young*, 613 F.3d 735, 746 (8th Cir. 2010) (cleaned up).

-5-

Hayes's argument for an entrapment instruction can only succeed if the record shows that the government induced his illegal conduct. "Inducement exists when the government 'implanted the criminal design' in the defendant's mind." *Id.* at 747 (quoting *United States v. Eldeeb*, 20 F.3d 841, 843 (8th Cir. 1994)). "Inducement occurs when the government creates a substantial risk that an otherwise law abiding person will commit a criminal offense." *United States v. Harriman*, 970 F.3d 1048, 1057 (8th Cir. 2020) (internal quotation marks omitted). "Inducement may include 'pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship.'" *Id.* (quoting *United States v. Clarett*, 907 F.3d 1100, 1102 (8th Cir. 2018)).

The government's arranged, undercover purchase of the firearm standing alone is not inducement. "[I]t is well settled that the government may use artifice, stratagem, and undercover agents in its pursuit of criminals." *Id.* (internal quotation marks omitted). "Where the government simply offers a defendant an opportunity to commit a crime, and the defendant promptly avails himself of the criminal opportunity, the defendant is not entitled to an instruction on entrapment." *United States v. Combs*, 827 F.3d 790, 796 (8th Cir. 2016).

If Hayes could show inducement, then the government must counter that proof with evidence of Hayes's predisposition to sell the weapon. "Once government inducement is established by the defendant, the burden shifts to the government to demonstrate beyond a reasonable doubt that the defendant was predisposed to commit the crime." *Young*, 613 F.3d at 747. "The predisposition element focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Id.* (internal quotation marks omitted).

-6-

On this record, we conclude that Hayes failed to establish that the government induced him to sell the firearm. The district court did not err in declining to accept Hayes's proffered entrapment defense. Hayes blames Nelson for his possession of the firearm: Hayes says that Nelson placed the firearm beneath Hayes's house and that he only took possession of it to make certain that his children would not get a hold of it. He asserts that "[i]t is unknown if Nelson set up the transaction with [Hayes], directing him to sell the firearm on Nelson's behalf." Appellee's/Cross-Appellant's Br. at 20. Hayes further contends that the government cannot satisfy its burden to show predisposition because "there is no information" about Hayes's conduct before the transaction and that all information is "reliant" on Nelson who "set all of this up" and "was also a known con-artist." *Id.* at 20–21. According to Hayes, "[t]he jury should have been given the ability to determine that Nelson was a liar and orchestrated the entire transaction," which required the court to instruct on entrapment. *Id.* at 21.

The factual record establishes law enforcement and its informant merely provided Hayes an opportunity to make a sale, which revealed Hayes's unlawful possession of the firearm that he sold to Agent Dodds. While authorities did make use of artifice and stratagem in arranging and executing the transaction, there is no evidence that they were responsible for inducing Hayes's possession of the firearm. *See Harriman*, 970 F.3d at 1057. There is no evidence that Nelson, Detective Fenceroy, or Agent Dodds used "pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship," to get Hayes either to possess or to attempt to sell the firearm. *Harriman*, 970 F.3d at 1057 (internal quotation marks omitted).

As there is no evidence of inducement, the court was not required to give an entrapment instruction. Our inquiry need not proceed further into the court's declination of an entrapment instruction. *See Young*, 613 F.3d at 746.

## B. Brady *Claim*

Next, Hayes argues that the government committed a *Brady* violation by allegedly failing to disclose information regarding a potential witness, Nelson's brother, because the discovery file that the government provided did not include the name of Nelson's brother.

As Hayes failed to raise this specific claim at trial or in his motion for a new trial, we review for plain error. *United States v. Horton*, 756 F.3d 569, 575 (8th Cir. 2014).

> To obtain relief under a plain-error standard of review, the party seeking relief must show that [(1)] there was an error, [(2)] the error is clear or obvious under current law, [(3)] the error affected the party's substantial rights, and [(4)] the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011).

Discovery material provided by the government indicated that Agent Dodds instructed Nelson, the informant, to contact a relative to have the relative to tell Hayes to contact Nelson. The material did not disclose either the relative's name or the fact that the relative in question was Nelson's brother. Nelson testified at trial that his brother was not involved in arranging the transaction. *See* R. Doc. 325, at 106, 128–29. Detective Fenceroy, however, testified to his understanding that Nelson had set up the transaction through his brother. *Id.* at 56 ("Q. So . . . Nelson's brother communicated with . . . Hayes for this meeting at the McDonald's? A. Yes."). Logically, had Nelson's brother actually gotten in touch with Hayes, then Hayes would have already been aware of the contact and possibly who it was. The government's failure to disclose the person's specific name and relation to Nelson did nothing to hinder Hayes's defense. Even assuming that this was an error, it is by no means "clear or obvious under current law." *Poitra*, 648 F.3d at 887.

There are three components of a true *Brady* violation: [(1)] The evidence at issue must be favorable to the accused, either [(a)] because it is exculpatory, or [(b)] because it is impeaching; [(2)] that evidence must have been suppressed by the State, either [(a)] willfully or [(b)] inadvertently; and [(3)] prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). "To establish a *Brady* violation, the defendant must show the government suppressed evidence that was both favorable to the defense and material to the issue of guilt or punishment." *United States v. Williams*, 577 F.3d 878, 882 (8th Cir. 2009) (quoting *United States v. Farmer*, 312 F.3d 933, 936 (8th Cir. 2002)). Such evidence is "material" only if there is a "reasonable probability" that, had it been disclosed, "the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (internal quotation marks omitted). An allegation based "solely . . . on conjecture and speculation, cannot support a [claim of a] *Brady* violation." *Horton*, 756 F.3d at 575.

Hayes argues that, had the government disclosed Nelson's brother's involvement in arranging the gun sale, Hayes could have called him to the stand to impeach Nelson's credibility due to the conflict between Nelson's testimony and Agent Fenceroy's testimony. *See* Appellee's/Cross-Appellant's Br. at 24 ("[His brother's] testimony would have resulted in confirmation of whether Nelson lied or the law enforcement officers lied."). The nondisclosure of Nelson's relative's name, at most, provides impeaching evidence on an immaterial issue. Even if Nelson's brother testified and his testimony was used to impeached either the agent or Nelson, it would alter none of the incriminating evidence establishing Hayes's illegal possession of a firearm with an obliterated serial number. Hayes's assertions are too speculative to support a *Brady* claim. The jury heard the testimony and was thus aware of the conflicting recollections of Agent Dodds and Nelson about the events leading to the sale. Furthermore, considering the weight of evidence against Hayes on the two counts of conviction, the failure to disclose the identity of Nelson's brother did not prejudice him. While it may have been arguably "favorable to the

defense" to have had the jury hear from Nelson's brother, such testimony would by no means have been "material to the issue of guilt," which was plain with or without a marginally amplified attack on the credibility of the police and an informant. *Williams*, 577 F.3d at 882 (internal quotation marks omitted). Therefore, as Hayes has not demonstrated a clear or obvious error under current law nor has he shown prejudice, his claim of a *Brady* violation fails plain-error review.

## C. *Ineffective Assistance of Counsel*

Lastly, Hayes argues that his trial counsel was ineffective. "We normally defer ineffective-assistance claims to 28 U.S.C. § 2255 proceedings." *United States v. Oliver*, 950 F.3d 556, 566 (8th Cir. 2020). "We review ineffective-assistance claims on direct appeal only 'where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent.'" *Id.* (quoting *United States v. Thompson*, 690 F.3d 977, 992 (8th Cir. 2012)). In short, we only review such claims on direct appeal in "exceptional cases." *Id.* (quoting *United States v. Sanchez-Gonzalez*, 643 F.3d 626, 628 (8th Cir. 2011)). This case is not such an exception. We decline to review Hayes's ineffective assistance claim on direct appeal.

## III. *Conclusion*

Accordingly, we affirm the district court.

_____